STATE ex Rel. BARR, Relator, v. DISTRICT COURT et al.,
RESPONDENTS.

(No. 7,966.)
(Submitted May 22, 1939.   Decided June 7, 1939.)
[91 Pac. (2d) 399.]

434

*Messrs. F. N. Hamman, T. R. Delaney* and *L. D. French,* for Relator, submitted a brief; *Mr. Hamman* argued the cause orally.

*Mr. R. H. Wiedman,* County Attorney of Lake County, and *Mr. Everett E. Lofgren,* Special Assistant Attorney General, for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

In July, 1938, the county commissioners of Lake county fixed a budget at the sum of $1,015 for maintaining a re-employment office and paying the salary of the person in charge. It was described as ''Miscellaneous Poor Fund Budget No. 248.'' This fund and all of the poor fund having become exhausted, the commissioners, acting under section 4613.6, Revised Codes, on February 7, 1939, by unanimous vote passed a resolution declaring an emergency necessitating the current use of $450 additional money for the salary, and $305.21 for maintenance of the re-employment office until June 30, 1939, to be appropriated from the anticipated revenue for the following year. The resolution was published, together with a notice that a public hearing would be held on March 7, 1939, at which taxpayers would be heard for and against the expenditures for such alleged emergency. After hearing, the commissioners sustained the resolution by unanimous vote. An appeal was taken by relator to the district court of Lake county, where, after hearing, an order or judgment was entered sustaining the action of the county commissioners. The relator, by this proceeding, seeks the supervisory power of this court to annul and vacate the order or judgment of the district court.

The first question presented is whether the county commissioners have authority to establish a re-employment office. The statutes do not in express terms grant authority so to do. If authority exists, it must be by virtue of power necessarily implied from those expressly conferred.

The duty of caring for the poor is primarily an obligation of the counties (sec. 5, Article X, Montana Constitution), but because of the magnitude of the undertaking, federal and state governments now cooperate with the counties in the discharge of this obligation. (*State ex rel. Wilson* v. *Weir*, 106 Mont. 526, 79 Pac. (2d) 305.) The indisputable fact that unemployment is the direct cause of most of the distress calling for relief in one form or another caused Congress to pass the Wagner-Peyser Act of June 6, 1933, providing for a national system of free public employment offices. (29 U. S. C. A., sec. 49c.) In general, it provided for cooperative action between the federal government and the states through a state board, department, or agency.

The Attorney General of Montana rendered an opinion on October 31, 1933 (Vol. 15, Attorney General's Rep., p. 261), to the effect that county commissioners have the power to employ a manager for a county employment office to cooperate with the National Re-Employment Service. He held that this power was implied from what is now section 4465.4, Revised Codes. Since then three legislative sessions have been held, and the legislature has not seen fit to declare to the contrary. While this executive construction of the law, acquiesced in by the legislative assembly, is not binding on this court, it is entitled to respectful consideration and will be upheld if not palpably erroneous. We think the Attorney General's opinion is sound, and that the county commissioners have the implied power to maintain a re-employment office, and to hire an employment manager in an attempt to place some of the dependent poor in remunerative employment and, to that extent, conserve the poor fund.

Section 4465.4, after providing that the county commissioners might erect and maintain hospitals for the indigent sick or otherwise dependent poor, gives the broad discretionary power to them to "otherwise provide for the same." By Chapter 82, Laws of 1937, state and federal governments assist the counties in caring for the poor, and by Chapter 137, Laws of 1937,

the state recognizes that unemployment increases the number of those needing government aid.

It is our view that the best aid that can be given to an employable dependent is to assist him in finding profitable employment. That is the purpose of the re-employment office. That it has met with some measure of success is disclosed by the record. That it is not restricted in its activities to helping only the dependent poor, but may furnish employment to those not in need, does not prevent the county commissioners from maintaining it, so long as its principal function or purpose is that of aiding the dependent poor, and the occasional furnishing of employment to those not in immediate need is only incidental.

Relator next contends that there was not sufficient evidence to sustain the action of the commissioners in declaring the existence of an emergency, or to sustain the action of the court in upholding the county commissioners in so declaring. The record discloses that the budget for the re-employment office was first fixed at $1,015 under the promise that the state and federal governments would match that amount dollar for dollar. The promise of the representatives of the state and federal governments was not made good, and, therefore, the budgeted amount was exhausted and the need for the employment office still existed.

There was ample evidence to warrant the court in upholding the action of the county commissioners in declaring an emergency. Under section 4613.6, Revised Codes, with respect to the hearing before the court, it is provided: ''At such hearing the court shall hear the matter *de novo* and may take such testimony as it deems necessary. Its proceedings shall be summary and informal and its determination as to whether an emergency, such as is contemplated within the meaning and provisions of this Act, exists or not, and whether the expenditure authorized by said order is excessive or not shall be final.''

We have assumed, without so deciding, that we have the right, notwithstanding the quoted provision, to determine whether there is substantial evidence to support the court's determination, or whether it acted capriciously. There being substantial

438

evidence supporting the court's order or judgment, we will not disturb it. Whether we would have the right to disturb it in the absence of evidence to support it, we need not now determine.

The only other point urged by relator is that, if the county █ commissioners have the right to maintain a re-employment office, they may not, in any event, pay the cost thereof out of the poor fund. What we have already said is sufficient answer to this contention. The authority to maintain such an office is implied from the express power to care for the dependent poor. The cost thereof may therefore be charged against the poor fund of the county.

The order or judgment of the court was proper. The writ applied for is denied and the proceeding dismissed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES STEWART and ERICKSON concur.

MR. JUSTICE MORRIS concurs in the result.