WIERI, APPELLANT, v. ANACONDA COPPER MINING CO., RESPONDENT.

(No. 8495.)

(Submitted January 4, 1945. Decided January 26, 1945.)

[156 Pac. (2d) 838.]

*Messrs. Wellington D. Rankin, Arthur P. Acher* and *Charles L. Zimmerman,* for Appellant, submitted a brief; *Mr. Acher* argued the cause orally.

*Messrs. W. H. Hoover, R. H. Glover, John V. Dwyer* and *James T. Finlen, Jr.,* for Respondent, submitted a brief; *Mr. Finlen* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an appeal from a judgment of the district court of Silver Bow County sustaining an order of the Industrial Accident Board, hereinafter referred to as the Board, dismissing a petition for additional compensation.

July 9, 1931, the defendant, operating under plan 1 of the ██ Workmen's Compensation Act, filed with the Board a written report of an accident to the plaintiff John Wieri, an employee. The accident occurred May 13, 1931, in the course of employment. Plaintiff's left leg was broken between the knee and hip by being caught under a mine car of ore that "fell over on him." The plaintiff was sent to Murray Hospital, Butte, Montana, for treatment with Dr. E. C. Person as attending physician. It appears that the Murray Hospital is under contract with the defendant to furnish medical care and hospitalization for the defendant's workmen who are injured while in the line of employment. Dr. Person reported the injury as "Fracture lower and middle one-third left femur," advised as to treatment given, adding that the plaintiff was not able to attend to any part of his regular occupation or any other, and that disability would likely continue for six months.

July 30, 1931, the plaintiff submitted a claim on the Board's form for compensation for total disability, and in reply to the question as to how long the disability would continue he answered, "Cannot say." The defendant began making payments July 30, 1931, at the rate of $15 per week pursuant to Section 2912, Revised Codes, the plaintiff being a single man of foreign birth and with no dependents. The payments began as of the date of May 13, 1931, the date of the accident. January 6, 1932, the plaintiff wrote the Board using poor English but in language from which it obviously appears he was complaining of his treatment at the Murray Hospital where he states he was a patient from May 13 to December 30, 1931. He stated he desired to make arrangements for a settlement and that he wanted a physician of his own choice. From the record it appears that nothing was done until September 8, 1932, at which time the defendant wrote the plaintiff requesting that he report to Dr. Person at the Murray Hospital on September 12, 1932 for an examination. September 8, the defendant wrote the Board transmitting a report by Dr. Person wherein the doctor had reported to the defendant on the condition of the plaintiff

as of May 18, 1932, as follows: "Complains a good deal about his stomach—says he has pains in stomach—can't eat. Advised to come up to clinic for examination of stomach. Patient says his leg is not right. Examination of leg shows straight bone— good function of knee joint. Advised him to get out of bed and use his crutches. Patient refused to do so." In the defendant's letter to the Board it is stated that plaintiff "has repeatedly refused to appear at the Murray Hospital Clinic for examination." September 23, 1932, Dr. Person reported to the defendant on plaintiff's condition, after seeing plaintiff at his rooming house, as follows:

"Examination of the back is negative except for a complaint of tenderness upon palpation over the twelfth dorsal spinal process. Abdomen is negative to palpation. Left leg seems normal in size and color, no loss of motion. Old fracture seems solid and there is a good callus.

"We feel that this man should be out and using his leg as we so advised him. I also advised him to report to the clinic for further observation as I do not believe he is going to make any effort for himself unless he is forced to do so."

After this examination the defendant wrote the Board intimating it intended to suspend further payments of compensation. In that communication to the Board the defendant said: "The doctors at the hospital inform us that this man has been obstinate from the outset, that he has repeatedly and persistently refused to comply with their instructions and that as a consequence of this attitude on the part of the claimant they have been unable to do much of anything that would tend to improve his condition and hasten his recovery." September 28, 1932, the Board wrote the plaintiff as follows:

"The Anaconda Copper Mining Company has informed the Industrial Accident Board that you refuse to go to the Murray Clinic for examination.

"Under the Law the employing company, which is paying the compensation, has a right to have you examined by physicians of their own choice. The physicians of the Murray Clinic

inform the Anaconda Copper Mining Company that you are able to go on crutches from your home to the Murray Hospital for examination.

"If this is correct, it is incumbent upon you to comply with their request. Please indicate to the Board whether you are agreeable to going to the Murray Clinic for examination. It appears to the Board that you should give such cooperation as you can to the physicians who are attending you so that your condition may be improved."

And at the same time the Board wrote the defendant in part as follows: "We note, however, that Dr. Person says that the claimant is able to get out of bed and use his crutches. It appears to the Board that if a man is still in such condition that it is necessary for him to use crutches that he is still entitled to compensation. We think the compensation should be continued when it is regularly due."

October 5, 1932, the plaintiff wrote the Board he would let any physician examine him but wanted a doctor of his own choice for operation; that he was not able to go on crutches to the hospital, and defendant would not furnish him a car, and the defendant and doctor think him an outlaw. October 7, 1932, the Board wrote the defendant advising that it furnish transportation for plaintiff to the hospital and "save a lot of argument." The defendant advised the Board the car would be furnished but added "this man, while willing that examination be made by the doctors at Murray Hospital, refuses to accept any treatment from the doctors there, and as a consequence does nothing to hasten his recovery. He further states that if the company will pay for treatment from some other doctor that he will accept it but until that is done he cannot and will not do anything but stay at home."

The record discloses nothing further for a period of 3 years and 9 months, or until July 17, 1936, at which time Dr. G. J. McHeffey of Murray Hospital wrote the Board and advised that: "Mr. Wieri was examined by Dr. G. J. McHeffey and Dr. J. K. Coleman July 11, 1936. Examination revealed no evi-

dence of disability. Patient obviously malingering. Fracture solidly healed in good condition."

July 23, 1936, Dr. J. K. Coleman wrote the defendant as follows:

"Examination on July 11, 1936, revealed the fracture of the left femur to be solidly healed, in good position, with no shortening. There was a full range of motion of the left hip, knee, and ankle; no atrophy of the thigh or calf. There was some lack of sensation of the surgical incision on the lateral aspect of the thigh.

"I do not believe that this man has any disability, and furthermore I believe that he is obviously malingering."

This report was transmitted to the Board.

October 9, 1936, plaintiff filed his petition with the Board alleging total disability and praying for a lump sum settlement. The answer of the defendant admitted the plaintiff had suffered an industrial accident and that he had been paid $15 per week from May 13, 1931, to July 29, 1936, but denied generally all other allegations of the petition.

The matter came on for hearing before the Board at the Finlen Hotel, Butte, Montana, December 15, 1937, plaintiff and counsel for both parties being present. After the plaintiff had been examined on the witness stand, direct, cross, and redirect, the Board, on request of counsel for plaintiff continued the hearing without date. April 1, 1938, the Board gave notice of hearing to be held at the Court House, Lewis and Clark County, Helena, Montana, April 19, 1938. The matter came on for hearing as noticed, with plaintiff and counsel for both parties present. Dr. E. H. Lindstrom, being called as a witness for the plaintiff, testified that plaintiff came to him "stating he had been injured several years previous," an "ore car dumped over on him crushing his chest, abdomen, fractured ribs," fractured left femur and that he was unable to get around. He was on crutches at the time. An examination showed negative except he had some pain in the chest where he had these fractured ribs; back showed no particular tenderness; left thigh was

atrophic from dis-use and much smaller than right; could bear no weight on left leg; walked with limp and dragged that leg; shortness of left leg of about an inch and a half; ribs negative and showed united fracture; some enlargement of heart; extent or length of disability little hard to estimate; had definite traumatic neuritis which was based upon the injury he had received. ''I would assume that he could do some walking on that leg if he would only do it, he was afraid to try and insisted that it hurt, and you just could not convince him to go ahead and try it.'' Witness was asked: ''Is it your opinion, Doctor, that in view of the fact that he has been disabled now for six or seven years since the accident that the condition would likely continue indefinitely in the future?'' The answer was in effect that improvement was rather indefinite. Plaintiff felt ''that he was mistreated, had a severe injustice done to him; if he was in a better frame of mind he might be able to do some work that would not require too much strain on that injured limb.'' On cross-examination he said the fracture was well united with solid union and that plaintiff should be able to place some weight on it. Not any reason why he could not use that leg as far as the original injury was concerned except he would walk with a limp but should be able to bear some unsupported weight on the leg. ''Of course there is a question on the amount of atrophy he might have in this leg, whether part of it is due to nerve injury.'' There was evidence of dis-use of the leg. As to the mental condition of the plaintiff, there was marked evidence of neurosis and plaintiff was bordering on insanity. Plaintiff mentioned his fractured ribs ''at the time he came to me.'' Found no evidence of nerve injury that he could directly put his finger on except there was possible nerve injury at the site of the fracture of the femur. No other evidence was presented to the Board at this hearing but the history of the case as heretofore mentioned was, by stipulation, entered in the record. The Board's conclusion was that: ''Such evidence as has been presented by the claimant conclusively shows that the *cause* of the disability is the fractured left femur. The Board finds that the

period of total disability of this man, which was of a temporary character, did not exceed 72 weeks." The Board further found that the defendant had paid the plaintiff compensation for 272 weeks or 200 weeks more than the character of his disability justified. The plaintiff appealed to the District Court of Silver Bow County.

On an appeal from the Board to the District Court, that court, except in so far as the Board's findings are affected by new evidence, if any, which is received at the hearing in the District Court, enters upon its review under the rule that: "The findings of the Industrial Accident Board are equivalent to the verdict of a jury or the findings of a judge, and, on an appeal from the judgment of a district court after review of the decision of the board, this court cannot reverse the judgment unless the evidence clearly preponderates against it." (*Anderson* v. *Amalgamated Sugar Company*, 98 Mont. 23, 30, 37 Pac. (2d) 552, 554 and cases cited.) And on a review by this court, "our province is but to ascertain whether there is any substantial evidence to support the findings and conclusions of the trial court." (*Sanders* v. *Lucas*, 111 Mont. 599, 111 Pac. (2d) 1041, 1042.) In the case at bar there was additional evidence received at the trial in the district court as follows: The plaintiff testified that "There is hardly any change since the last hearing." Testimony relative to any injury except as to the broken leg was received over the objection of the defendant. Dr. Emery testified that he thought the plaintiff's disability was the result of the accident; that he considered the plaintiff totally and permanently disabled. On cross-examination, it appeared that he had just examined the plaintiff the day and night before testifying; that he had taken an X-ray of the plaintiff's back, and tested the break in the leg and found the union good, but found the left leg about one and a half inches shorter than the other, and half an inch difference in the circumference of the two legs, found atrophy of the left leg which could be due to non-use or "to nerve involvement." He admitted that it should be expected that non-use of the leg for a period of years would result

in atrophy. As to the pain plaintiff said he suffered, the witness relied upon what the plaintiff told him.

Dr. J. K. Coleman, testifying for the defendant, said he had examined or saw the plaintiff on one occasion, in July 1936; the "fracture had solidly healed in good condition and alignment," not more than half an inch shortening; in his opinion the plaintiff was not disabled; the plaintiff gave him no advice about any injury to his back, stomach or ribs; some slight overlapping of fragments at the point of fracture; that so far as the injury of May 1931 is concerned the plaintiff is able to do manual labor as a miner; that the plaintiff is a malingerer. On cross-examination, he admitted he had learned from the record that the plaintiff complained of pain in the back, stomach and legs a year or more after but no reference was made to any such complaints at the time of the injury; he thought the plaintiff a faker or malingerer; he did not believe the plaintiff was suffering from neuritis. Both parties rested.

The decree of the court sustained the order of the Board, denying and dismissing the petition of the plaintiff praying for additional compensation; likewise sustained the board's order denying a rehearing, and gave judgment for the defendant with costs. The plaintiff appealed.

Four specifications of error are assigned, only three of which we deem material. The first is on alleged error by the court in sustaining the decision of the Board; the second is on the affirmance of the order of the Board in denying a rehearing; and the third is on the denial of the motion for a new trial.

On the review of a decision of the District Court the presumption is that the decree of that court is correct (*Great Northern R. Co.* v. *Benjamin,* 51 Mont. 167, 149 Pac. 968; *State* v. *Schoenborn,* 55 Mont. 517, 179 Pac. 294; *Ringling* v. *Smith River Development Co.,* 48 Mont. 467, 138 Pac. 1098; *Kosonen* v. *Waara,* 87 Mont. 24, 285 Pac. 668; *Autio* v. *Miller,* 92 Mont. 150, 11 Pac. (2d) 1039; *Cedar Creek Oil & Gas Co.* v. *Archer,* 112 Mont. 477, 117 Pac. (2d) 265), and that its judgment will

not be set aside unless there is a clear preponderance of the evidence against it.

It is obvious that the District Court did not believe the new evidence received in the trial before it materially affected the evidence that was before the Board, hence affirmed the Board's decision denying plaintiff's petition for additional compensation, and likewise his motion for a rehearing. We think the trial court was correct and that there is substantial evidence shown by the record to sustain the conclusions of that court.

On the question of the motion for a new trial, a number of affidavits is all that appears in the record to support the motion. All the affidavits were before the trial court. We find nothing new in any of them. If the facts affiants allege in their respective affidavits were established on a new trial they would be evidence merely of a cumulative nature. "To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear to the court that there is reasonable probability that, upon a retrial, the evidence proposed will change the result" (*Gould* v. *Lynn,* 88 Mont. 501, 505, 293 Pac. 968, 970), and granting "a motion for a new trial lies within the sound discretion of the trial court, and its order thereon will be reversed only on manifest abuse of that discretion." (*Maki* v. *Murray Hospital,* 91 Mont. 251, 260, 7 Pac. (2d) 228, 230 and cases cited.)

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ADAIR, ANGSTMAN and CHEADLE concur.

Rehearing denied March 27, 1945.