The STATE of MONTANA, ex rel. WALTER EBEL, Relator and Respondent, *v.* MRS. ELMER SCHYE, et al., and The BOARD OF ADMINISTRATION of the PUBLIC EMPLOYEES' RETIREMENT SYSTEM of The STATE OF MONTANA, Appellants.

No. 9714.

Submitted July 17, 1956.   Decided December 19, 1956.

Rehearing Denied January 4, 1957.

305 Pac. (2d) 350.

Mr. Ralph J. Anderson, Helena, for appellant.
Messrs. Skedd, Harris & Mufich, Helena, for respondent.
Mr. Anderson and Mr. LaVerne V. Harris argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal from a judgment entered in the district court of Lewis and Clark County, directing the issuance of a peremptory writ of mandate against the Board of Administration of the Ppblic Employees' Retirement System of the State of Montana and its members.

The proceedings were brought by Walter Ebel, the relator, under the Public Employees' Retirement Act, R.C.M. 1947, Title 68, section 68-101 to 68-1320.

The district court made findings of fact and conclusions of law, and in accordance therewith, entered its decree in favor of the relator, Walter Ebel, and against the Board of Administration of the Public Employees' Retirement System and its members, against whom the court ordered the issuance of a writ of mandate requiring said Board and its members to carry out the terms and conditions of the decree.

For more than forty years last past the relator, Walter Ebel, has been and he still is a resident of Chinook, Blaine County, Montana. He is a man of limited education, having only reached the sixth grade in school. The only kind of work he has ever done has been heavy manual labor. He has no formal or special training or education especially fitting him for any particular type of work. Continuously for some five or six years prior to and including March 18, 1951, the relator Ebel, was employed by Blaine County, Montana.

On March 18, 1951, the relator Ebel was driving and operat-

ing Blaine County's fourteen ton road maintainer, on which there was a snowplow attachment. A blizzard was raging and the relator Ebel, in the performance of the duties for which he was hired, was plowing snow in an attempt to open a highway on which a traveler was reported to have been lost or frozen.

While so engaged the road maintainer plow suddenly struck a rock with great force, stopping the machine dead still. By the force of the impact the relator Ebel was thrown forward, striking his nose and head on the metal cab of the machine and the lower portions of his body hitting the steering wheel of the maintainer, by reason whereof relator became and was shocked and dazed.

The following day the relator was treated in Chinook by Dr. Leeds for the injuries which he had sustained. Thereafter the relator attempted to work but continued to suffer so much pain in his neck, back, and head that in the latter part of October 1952 he was finally forced to quit work, since which time relator's condition has steadily grown worse by reason whereof he has been able to work but three or four half days since December 1955, for which he only earned and for which he was only paid the sum of $20 to $25.

It is conceded that the relator sustained such accidental injuries on March 18, 1951, in the course of his employment as an employee of Blaine County, Montana and that he came within the provisions and protection of both the Public Employees' Retirement Act, R.C.M. 1947, sections 68-101 to 68-1320, and the Workmen's Compensation Act of the State of Montana, R.C.M. 1947, sections 92-101 to 92-1222.

On March 18, 1952, the relator Ebel filed a claim for workmen's compensation with the Industrial Accident Board of the State of Montana for and on account of the accidental injuries so received. After the lapse of considerable time the Industrial Accident Board made a compromise lump sum settlement with the relator for his claim for permanent partial disability.

On October 3, 1953, and before reaching any settlement with the Industrial Accident Board of his claim so filed, the relator

filed, with the Board of Administration of the Public Employees' Retirement System, a claim for retirement disability allowance, which claim said Board considered together with all medical reports at its regular meeting held on October 22, 1953, at which time such Board unanimously approved relator's claim and awarded him industrial disability retirement benefits in the sum of $138.82 per month. However, the respondent Board's resolution provided and required that any payments made to the relator by the Industrial Accident Board would be deducted from relator's retirement payments. Thereby did the respondent Board determine that the rate of disability retirement to which the relator was entitled, without regard to any workmen's compensation benefits, is the sum of $138.82 per month.

After the Industrial Accident Board made its lump sum settlement with the relator, the respondent Board of Administration of the Public Employees' Retirement System, then deducted $101.83 per month from the $138.82 per month originally awarded to relator and from October 16, 1952, to December 1, 1955, paid the relator disability retirement benefits of only $36.99 per month, being the amount of the difference between the above mentioned $138.82 and the $101.83. Since December 1, 1955, the respondent Board has paid relator nothing. These facts stand undisputed in the record.

The record further shows that the respondent Board has denied relator's repeated requests that he be paid disability retirement benefits in the amount of $138.82 per month from October 16, 1952, as authorized by the statutes and by the respondent Board's findings.

The relator and his counsel were present at a meeting of the respondent Board held on November 18, 1955, at which the legal questions involved were discussed, following which the respondent Board discontinued all of relator's industrial disability retirement benefits.

The Public Employees' Retirement Act, R.C.M. 1947, Title 68, in section 68-501, thereof, in part, expressly declares: "The

attorney general is hereby designated legal counsel for the board.''

In R.C.M. 1947, section 82-401, the legislatire has prescribed the duties that are imposed upon the attorney general and by such law the legislature has declared it is the duty of the attorney general ''To give his opinion in writing, without fee * * * to any state officer, board, or commission * * * when required upon any question of law relating to their respective offices.'' Subd. 6.

On February 15, 1951, the attorney general of Montana rendered and delivered to the secretary of the respondent Board a written official opinion dealing with a similar case relating to the questions here involved, being Opinion No. 3 in Volume 24 of the Official Reports of the Attorney General, which opinion states:

''It is therefore, my opinion that an employee who is a member of the Public Employees' Retirement System and who is also covered by Industrial Accident Insurance shall be eligible to draw benefits from the Industrial Accident Board and shall also be entitled to whatever retirement allowance is payable under the circumstances of his case. The benefits paid to an injured workman by the Industrial Accident Board are entirely separate and distinct from any payments made out of the retirement fund and the Public Employees' Retirement Board may not subtract benefits paid by the Industrial Accident Board when computing the retirement allowance to be paid by the Public Employees' Retirement System.''

The foregoing opinion was rendered during the Thirty-second Session (1951) of Montana's Legislative Assembly. Since the handing down and publishing of such opinion two other legislative sessions have been held, yet the legislature has not seen fit to take issue with the opinion or to enact any statute declaring otherwise.

While executive construction of the law, acquiesced in by the legislative assembly, is not binding on this court, yet such interpretation is persuasive and will be upheld if not erroneous.

Compare State ex rel. Barr v. District Court, 108 Mont. 433, 436, 91 Pac. (2d) 399.

At its meeting held on November 18, 1955, the respondent Board of Administration, after considerable discussion had, directed its secretary to employ private counsel to resist relator's efforts to obtain the retirement payments which its Board had theretofore set, determined, and allowed.

It is to be regretted that the respondent Board of Administration saw fit to ignore the counsel, advice and written opinion of the attorney general as well as the plain direction and mandate of the legislature. R.C.M. 1947, section 68-501 and section 82-401. When the legislature has so expressly provided legal counsel and services for the Board at no expense to the retirement system, the trust funds of that system should not be used for the payment of attorneys' fees and services already supplied and provided for by express statutes.

The respondent Board contends that after finding the relator to be incapacitated as a result of an injury arising out of and in the course of his employment and after making and fixing his benefit payments, such Board may then deduct from such benefit payments such sum as has been awarded by the Industrial Accident Board for the same or like injuries, in the absence of a finding by the Industrial Accident Board that by reason of his injuries the claimant has become totally and permanently disabled.

R.C.M. 1947, section 68-901, subd. (h), as amended by chapter 186, Laws of 1951, of the Retirement Act, so far as pertinent here, provides:

"* * * If the board determines on the evidence that it obtains and application filed that the disability resulted from injury or disease arising out [of] and in the course of employment, the said member shall be retired forthwith and be paid the benefits provided under the retirement system."

R.C.M. 1947, section 68-901, subd. (h), further provides:

"Any compensation paid by the industrial accident board of the State of Montana to any member of the retirement system

for *total* and *permanent disability* resulting from injury or disease arising out of and in the course of employment shall be deducted from the benefits payable under the retirement system for such disability.

"In any case where the industrial accident board makes a determination that disability of a state employee resulted from injury or disease arising out of and in the course of employment and pays compensation thereon for a *total* and *permanent disability*, the industrial accident board shall certify its findings and determination to the board of administration of the public employees' retirement system." (Emphasis supplied.)

The record herein discloses that the settlement and payment ▮ made to relator by the Industrial Accident Board was based and made upon the finding by the Industrial Accident Board that the relator Ebel had suffered an injury arising out of and in the course of his employment, amounting to fifty-seven per cent, *permanent partial disability of his body as a whole.*

It will be observed that the Industrial Accident Board *did not find,* nor did it pay relator for *total* and *permanent disability,* and therefore the Industrial Accident Board was not, by section 68-901, subd. (h), or otherwise, required nor directed to certify the findings, determination, or payments it made to relator to the Board of Administration of the Public Employees' Retirement Board, and for the same reason the Public Employees' Retirement Board was without authority or justification in requiring or making any deduction or deductions in the retirement payments it found, determined and awarded to relator on account of any payments made by the Industrial Accident Board.

It should be noted in passing that R.C.M. 1947, section 68-1304, so far as pertinent here, provides:

"After a member has qualified as to service and disability for retirement for disability, * * * *nothing shall deprive him of the right to a retirement allowance as determined under this act.* Such retirement allowance and qualification therefor, shall be subject otherwise to the provision of this act." (Emphasis supplied.) Thus the legislature established the public policy of the

state in such matters. Compare Henderson v. City of Missoula, 106 Mont. 596, 601, 602, 79 Pac. (2d) 547, 116 A.L.R. 1425.

The record shows that the respondent Board of Administration, through its investigations and from its doctors' reports and other information, found and determined that relator had suffered an injury arising out of and in the course of his employment and that such industrial disability retirement was based on a permanent disability of chronic strain of the cervical dorsal region, fracture of the bridge of the nose and cervical concussion, by reason whereof the respondent Board approved the relator's claim for industrial disability retirement in the sum of $138.82 per month.

It should be kept in mind that we are here dealing with two distinct, separate and independent legislative acts. Each act covers an entirely different field. Each act establishes the public policy in regard to the particular field and subject treated. The two acts are the Workmen's Compensation Act and the Public Employees' Retirement Act.

The Workmen's Compensation Act was enacted by our legislature as chapter 96, Laws of 1915, and was approved March 8, 1915. That act as now amended is set forth in Title 92, R.C.M. 1947. The act was passed to meet the need and demands of both employers and employees that a limited liability of the employer should be fixed for the injury, attendant disease or death resulting from an industrial injury or death to an employee and that assurance should be given to the employee or his dependents that in case of accidental injury or death while in employment there should be some compensation in lieu of wages. The legislature thus established the public policy of the state in regard to workmen's compensation.

The Public Employees' Retirement Act was enacted by our legislature as chapter 212, Laws of 1945. Such act as amended now appears in Title 68, R.C.M. 1947. The legislature found and determined, as the federal government and private industry had found and determined, that some form of retirement was necessary to stabilize and make more efficient state employ-

ment and employment in subdivisions and agencies of the state.

In enacting the Public Employees' Retirement Act, the legislature declared:

"*The purpose of this act is to effect economy and efficiency in the public service* by providing a means whereby employees who become superannuated or *otherwise incapacitated* may, without hardship or prejudice, be replaced by more capable employees ,and to that end providing a retirement system *consitsing of retirement compensation* and death benefits." R.C.M. 1947, section 68-101. (Emphasis supplied.) Compare State ex rel. Jardine v. Ford, 120 Mont. 507, 510, 188 Pac (2d) 422, 423.

This Public Employees' Retirement System is self-participating in that a certain percentage of each employee's stated salary is deducted and placed in his retirement fund, at interest, so that after the required time and age, or incapacity, the employee may retire and draw his proportionate retirement income.

Dr. D. E. Monserrate testified that he had examined the relator and that in his opinion the relator with a minimal education, having done heavy work for years, is totally incapacitated as far os doing any kind of work involving heavy physical labor or in driving a road maintainer.

Dr. Person, of Great Falls Clinic, at the request of the respondent Board, examined the relator and wrote the Board that on the basis of that examination he believed that Ebel had ten to fifteen per cent permanent partial disability.

Dr. R. B. Richardson, also of the Great Falls Clinic, called as a witness for the respondent Board testified that on December 2, 1955, at the request of the Public Employees' Retirement Board, he made an examination of the relator, Walter Ebel; that on the 5th day of December, 1955, he made a written report thereon; that therein he stated: "I see no reason to feel that there is any further disability than the ten to fifteen per cent permanent partial disability."

Dr. Richardson testified that on December 1, 1955, he had made a bone and joint examination of Ebel for the Board and

that he (the doctor) recalled that Ebel had been operating road equipment and that there would be times when relator would have discomfort or pain in his neck and shoulder which would make it necessary for him to lose some time.

The doctor was interrogated and made answer as follows:

"Q. Would the conditions you found in him at the time of your examination in any way affect his doing heavy labor? A. By 'heavy labor', you mean * * *

"Q. Such as driving a 14-ton road maintainer or such as lifting 200 pounds, that sort of thing? A. I think it would bother him if he was consistently, day by day, lifting 200 pounds.

"Q. If he were working eight hours a day? A. I don't know how much force it takes to work the grader.

"Q. Would vibration have some effect on him? A. Yes, it would.

"Q. Would vibration make it more difficult to do that sort of work in his condition? A. I would think so."

Dr. Richardson further testified that there would be days when Ebel would have to lay off; that cold would give him more pain symptoms and aggravate the symptoms and that he (the doctor) had not seen Ebel prior to the examination of December 1, 1955.

Dr. Allard of Billings, Montana, who had examined relator twice, filed a report showing the cause of relator's condition was an injury suffered March 18, 1951, when a road patrol relator was driving struck a rock, throwing relator against the top of the cab; that he (the doctor) found pain in the lower cervical and upper dorsal regions; headaches; discomfort in the right inguinal region; numbness sensation in the bridge of the nose; aching in the legs, disturbance of vision and the condition was diagnosed as chronic strain in the cervical and dorsal regions. The doctor's prognosis foretold with caution as to the likelihood of relator's recovery to such extent as to ever return to his former type of occupation and the doctor rated the relator

as thirty-five per cent permanent partial disability as compared to loss of the body as a whole.

Mr. Roy Street, therapy technician of Havre, Montana, to whom Dr. Allard of Billings referred Ebel for treatment, sent a sworn statement to the Board on October 7, 1953, wherein he stated:

"Last April Dr. Louis Allard of Billings, Montana referred Walter Ebel, of Chinook, Montana, to me for Physical Therapy treatment. Since that time I have given him treatments. He has a permanent injury as I see it. His neck in the cervical region has scar tissue; also scar tissue in the upper dorsal region extending out over the brachial plexus. The throat in front of the auditory tube also has scar tissue which will require treatment for a long time, perhaps permanently. Dr. Allard says from the X-rays relator's axis bone in the cerebro spinal column is set to one side. Dr. Hurd of Great Falls operated on the nasal bridge and has given him some relief, but not complete relief.

"It is my belief Walter Ebel will require treatment almost permanently. So, in my opinion, I do not see why I should release him as yet because he is still troubled. He requires treatment for relief, sometimes once a week, and sometimes he can go two weeks between treatments. I do not remember the exact date I started treating him, but I think it was April of this year, 1953."

It will be noted that each of the above doctors was of the opinion that relator was incapacitated for the kind of work for which he was fitted by age, education, general physical and mental capacity and previous work experience in some degree. Drs. Person and Richardson apparently felt that his disability was ten to fifteen per cent permanent partial disability; that cold would adversely affect relator; that vibration would be bad for him; that there would be days when he would have to lay off and that it was difficult to say that Ebel is totally disabled.

Medical testimony, as other expert testimony, is intended to

██ aid, but not to conclude a court or jury. The Board's interpretation of the Public Employees' Retirement Act would appear to be that if an injured member is able to do any kind of work, however trivial and unremunerative and however foreign to the type that he had theretofore followed and been trained to do, and for which he alone was qualified by experience, educational background and age to perform that notwithstanding such injury, the member may not establish a claim for disability retirement of a permanent character, partial or total, as a basis therefor.

The terms of the act do not so provide, nor does any case that we have found support such construction. The statute R.C.M. 1947, section 68-901, subd. (h), in part, provides:

"Any member who has not reached seventy (70) years of age shall be retired for disability *if incapacitated for the performance of duty as the result of any injury* or disease arising out [of] and in the course of his employment."

The evidence is conclusive that relator is incapacitated for the performance of the duties he was hired to perform and had performed satisfactorily for many years. The Board of Administration was right in so finding.

Upon the trial of this case in the district court, considerable ██ medical and other testimony was introduced, and while there was some conflict in the testimony there was sufficient evidence, if believed by the court, to sustain its findings and judgment. When there is conflict in the evidence, if it does not appear that the evidence clearly preponderates against the findings of the court, the judgment of the court will be sustained. Compare Birdwell v. Three Forks Portland Cement Co., 98 Mont. 483, 40 Pac. (2d) 43, 47. This court will not reverse the findings of the district court except where the evidence preponderates against it. Compare Woin v. Anaconda Copper Min. Co., 99 Mont. 163, 43 Pac. (2d) 663, and Wieri v. Anaconda Copper Min. Co., 116 Mont. 524, 156 Pac. (2d) 838.

The judgment of the district court is affirmed and the relator, Walter Ebel, is awarded and he shall recover of and from the

respondent Board of Administration of the Public Employees' Retirement System, relator's costs on this appeal together with a reasonable attorney's fee in the sum of $250.00, incurred in procuring counsel and prosecuting this appeal. It is so ordered.

MR. JUSTICES ANGSTMAN, ANDERSON and BOTTOM-LY, concur.

MR. JUSTICE DAVIS, (specially concurring).

Under R.C.M. 1947, section 68-901, subd. (h), it is the Industrial Accident Board which determines when a member of the Montana Retirement System, who appears before that Board to claim compensation as provided in our Workmen's Compensation Act, is totally and permanently disabled. With that determination the Public Employees' Retirement System of the state and its Board (hereafter the Retirement Board) has nothing to do. Nor may the Retirement Board make that determination in any case where the Industrial Accident Board has not done so. The statutes themselves are conclusive here.

In Ebel's case before us the Industrial Accident Board did not pay him any compensation for total and permanent disability. The record shows precisely this. It did not certify to the Retirement Board any finding or determination by it to the effect that Ebel was totally and permanently disabled, or that any compensation paid him by it was for total and permanent disability. It could not; for the findings it made were to the contrary.

It follows that neither the Retirement Board nor the courts can deduct from the benefits paid him as a retired public employee any of the compensation awarded him by the Industrial Accident Board when it concluded with him the compromise lump sum settlement of his claim before that Board which appears in this record. The statute, section 68-901, subd. (h), gives it no such authority. More specifically on the facts of this record the Retirement Board was without jurisdiction to make any such deduction as it did in Ebel's case. Its plain duty was

to pay Ebel the retirement benefits which it had found due him without deduction at all for anything paid him by the Industrial Accident Board, for a "57%, permanent partial disability of the body as a whole".

Therefore I would affirm the judgment of the district court which is brought before us on this appeal; and in order to do so I think nothing more need be written. Particularly I do not think it our province to comment upon the right of the Retirement Board to employ private counsel as it may think best in the exercise of a sound administrative discretion. I do not believe under the statutes of the state that Board necessarily must rely solely upon the services and opinions of the attorney. general.

I think the allowance of attorney's fees in the sum of $250 to the relator Ebel as damages sustained on account of this appeal from the judgment of the district court, which correctly granted him a writ of mandate, is reasonable and justified by the record.

But other than as I have indicated above I do not concur in what is written in the majority opinion.

On Petition for Rehearing

PER CURIAM.

It is ordered that appellants' petition for rehearing be, and it is, denied and that remittitur issue.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS: (specially concurring in denying and disallowing the petition for rehearing herein).

By petition for rehearing counsel for the Retirement Board urge that on December 15, 1955, that Board acting under R.C.M. 1947, section 68-1001(a), determined the relator Ebel was no longer incapacitated as had been its original finding in his case, and accordingly canceled his "disability retirement ef-

fective as of December 1, 1955.'' This action by the Retirement Board, it is said, is not subject to review by the courts. Hence the judgment of the district court brought before us on this appeal and our affirmance of that judgment, it is argued, is necessarily wrong. The point made here I think must be met and answered.

This proceeding was commenced in the lower court on December 2, 1955, thirteen days before the Retirement Board acted to deny Ebel any retirement benefits at all after December 1, 1955. Implicit in the express findings made by the district judge in this matter is his further finding that the Retirement Board acted here in Ebel's case both capriciously and arbitrarily, i.e., to punish him for refusing to abide by its ruling that it could lawfully deduct the award made him under the Workmen's Compensation Act from his disability retirement benefits payable by the Retirement Board.

There is substantial evidence to support this implied finding of the trial court. The weight of the evidence taken there is certainly not to the contrary. We are accordingly bound by it. In these circumstances then we may not set aside the district court's judgment, which rests in part at least thereon. Otherwise phrased, it is clear to me on this record that by its order of December 15, 1955, the Retirement Board could not defeat Ebel's proceeding theretofore brought on December 2, 1955, for a writ of mandate to compel the payment of what was then due him as his case stood at that time; and I think the district judge was right in so holding when he entered the judgment below in Ebel's favor. Moreover, because this arbitrary order was plainly entered in bad faith to effect an end which lay beyond the Retirement Board's lawful sphere of action, I agree further with the trial judge that it must be disregarded. The judgment of the district court rightly does so.

But that judgment is explicit to the point that thereby the Retirement Board is ordered to pay Ebel retirement benefits amounting to $138.82 a month only as ''long as relator's qualifications for such benefits shall continue unchanged.'' Here is ex-

press recognition of the Retirement Board's authority to act under R.C.M. 1947, section 68-1001(a), whenever Ebel's case justifies action. Nothing contained in the judgment of the district court, which we affirm here, justifies the contention that either that judgment or our affirmance ousts the Retirement Board of the lawful jurisdiction which is plainly its own under section 68-1001(a).

My concurrence in that affirmance and what I have written to the point that the judgment affirmed is right is not to be construed as an intimation otherwise. Particularly I disavow any suggestion that the Retirement Board may be coerced or its acts reviewed in the courts when that Board acts within the jurisdiction and in the exercise of the discretion given it by the statute. Because the judgment below does not presume to trench upon that jurisdiction, or to infringe upon that discretion, and because my concurrence in the affirmance of that judgment. fairly read, is likewise not designed to do so, I concur in the denial of the appellant Board's petition for rehearing.

MR. JUSTICE ANGSTMAN:

I think there should be deleted from the opinion the reference to the board's appointment of counsel which question was not before the court, or the petition for rehearing should be granted.