No. 13596

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA on the relation of
May Jenkins, Treasurer for Yellowstone
County, State of Montana,

                    Plaintiff and Respondent,

    -vs-

CARISCH THEATRES, INC.,

                    Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial
            District,
            Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        Crowley, Haughey, Hanson, Gallagher and Toole,
        Billings, Montana

    For Respondent:

        Harold Hanser, County Attorney, Billings, Montana

    Cause submitted on briefs.

---

                      Submitted: May 4, 1977

                         Decided: JUN -3 1977

Filed:  JUN -3 1977

           *Thomas J. Kearney*
                            Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court:

This appeal from the district court, Yellowstone County, concerns the licensing of motion picture theaters.

From 1971 through 1976 Carisch Theatres, Inc. (Carisch) operated one drive-in theater and three theaters in the Cine 3 complex within the city limits of Billings, Montana. The treasurer of Yellowstone County, May Jenkins, claimed $100 per theater per year must be paid as a license fee, pursuant to section 84-3201(2), R.C.M. 1947. Carisch remitted payment of $25 per theater per year for the years 1971, 1972 and 1973. No payment was made to the treasurer in the succeeding years. Thereafter, this action was filed against Carisch to collect the alleged license taxes due. The case was submitted to the district court on a stipulation by the parties stating that Carisch's business at the theaters was limited to the exhibition of moving picture shows and the sole question was whether Carisch is a theater, as contemplated by section 84-3201(2) and therefore required to be licensed for four theaters under that section, or whether Carisch is an exhibitor of moving pictures as contemplated by section 84-3205, R.C.M. 1947, and only responsible for a license under that section.

The district court entered an order requiring Carisch to pay a license tax for the years 1971 through 1976 for its four theaters in the total amount of $2,400 pursuant to section 84-3201(2).

Carisch appealed from this order contending that section 84-3205 and not section 84-3201(2) is the only statute which could require a license tax for motion picture theaters. Furthermore, Carisch argues section 84-3205 is no longer in effect and consequently no license tax is due for the operation of the Carisch theaters.

- 2 -

A brief history of legislation concerning the licensing of motion picture theaters in Montana will enable us to analyze the issues presented.

Section 84-3201(2) reads:

"2. The manager or lessee of every theater (not a variety or concert theater) one hundred dollars ($100.00) per annum; except that in towns of a population of three thousand five hundred (3500) or less, in cases where no monthly license is paid, a license of two dollars ($2.00) for each single performance must be paid; for each single exhibition of opera or concert singer (not exhibited in any theater where a yearly license is paid), three dollars ($3.00); for minstrels, legerdemain, or shows not herein provided for, five dollars ($5.00) for each single performance (when not in a theater where a yearly license is paid); for each variety or concert theater, whether an admittance fee is charged or not, seventy-five dollars ($75.00) per month; _for every traveling show exhibiting in tents, open air or other than a regular theater, such as circuses, menageries, side shows, carnivals, wild west shows, animal shows or tent shows, traveling in less than twenty-five (25) railroad cars, seventy-five dollars ($75.00) per day, over twenty-five (25) railroad cars, two hundred dollars ($200.00) per day, traveling on highways in ten (10) trucks or less, twenty-five dollars ($25.00) per day, eleven (11) to twenty-five (25) trucks, fifty dollars ($50.00) per day, more than twenty-five (25) trucks, seventy-five dollars ($75.00) per day;_ but no license must be collected from any amateur exhibition or concert for school or charitable or religious purposes, _from any county, district or state agricultural fairs, rodeo associations, or from any veterans' organizations not conducted for private gain._

"Provided the county treasurer shall not issue any license for circuses, side shows, carnivals, menageries, wild west shows, animal shows or tent shows to be held or performed within a period of thirty days just prior to or during the holding of any local, county, district or state fair or rodeo without first obtaining the written consent of the board of county commissioners of the county where application is made for such licenses to operate such shows." (Emphasis supplied.)

This section was enacted in 1903 and was amended four times, in 1935, 1945, 1949 and 1953. Those parts of the section emphasized above show the result of those amendments.

In 1913, the legislature adopted section 84-3205. This section has never been amended. It provides:

"No license shall be required for the operation or exhibition of moving picture shows in any city, town, or village where the population does not exceed one thousand five hundred. In all other cities the license shall be twenty-five dollars per year."

In 1937, Chapter 91, Laws of 1937 was passed by the legislature, entitled:

"CHAPTER 91

"An Act Requiring Licenses for the Operation, Maintenance, Opening or Establishment of Moving Picture Theatres; Relating to Exemptions From Such License Requirement; Relating to the Collection and Disposition of License Fees, and Repealing All Acts and Parts of Acts in Conflict Herewith."

This entire act, comprised of ten sections, was concerned solely with the licensing of motion picture theaters. The act made it unlawful to operate a moving picture theater without procuring a license from the state board of equalization. The licenses were to be issued quarterly, with the fee based upon 1 1/4% of the gross proceeds from the sale of tickets in excess of $3000 per quarter. These fees were to be turned over to the state treasurer, and deposited in the general fund. This act was amended in 1953, by raising the quarterly exemption from $3000 to $20,000 per quarter. Chapter 74, Laws of 1953.

In 1957, the legislature expressly repealed Chapter 91, Laws of 1937. Chapter 33, Laws of 1957.

As to Carisch's first contention, we agree a motion picture theater is not a "theater" as contemplated by section 84-3201(2). That section was adopted in 1903, well before the existence of motion picture theaters. Further, the amendments to section 84-3201(2), as previously set forth, were not directed at motion picture theaters and in no way indicate an intent to include motion picture theaters within the meaning of "theater" as used therein. Additional evidence the legislature did not contemplate motion picture theaters to be included in section 84-3201(2) was the adoption of section 84-3205 in 1913, which specifically considered licensing the exhibition of

- 4 -

moving picture shows. Therefore, we agree that if Carisch is liable for any license tax on its motion picture theaters, the authorization for such tax must exist by virtue of section 84-3205. See: 16 Official Opinions Montana Attorney General 17 (1935).

Therefore, we next determine whether section 84-3205 is effective to date. This question is subdivided into two issues:

1) Whether Chapter 91, Laws of 1937, repealed section 84-3205 by implication?

2) If so, whether section 84-3205 was revived by the repeal of Chapter 91, Laws of 1937?

The first issue cannot be answered by simply reading the general repealing clause in Section 10, Chapter 91, Laws of 1937. This clause adds nothing to the repealing effect of the act, since, without the clause, all prior conflicting laws and parts of laws would nevertheless be repealed by implication. State ex rel. Charette v. District Court, 107 Mont. 489, 86 P.2d 750; State ex rel. Wetzel v. Ellsworth, 143 Mont. 54, 387 P.2d 442; 1A Sutherland Statutory Construction, 4th Ed., §23.08. What must be decided is whether the two statutes are wholly inconsistent, incompatible, and not capable of being reconciled. Teamsters Local 45 v. Montana Liquor Control Bd., 155 Mont. 300, 471 P.2d 541. If so, the earlier statute is repealed. State v. Langan, 151 Mont. 558, 445 P.2d 565.

The key to solving such a dilemma is the legislative intent in passing the subsequent act. We have previously stated the intent to repeal all former laws on a subject is made apparent by the enactment of subsequent comprehensive legislation establishing elaborate inclusions and exclusions, and all acts and parts of acts, in conflict therewith are repealed. State ex rel. Dahl v. District Court, 134 Mont. 395, 333 P.2d 495; State ex rel. Wetzel v. Ellsworth, supra;

1A Sutherland Statutory Construction, 4th Ed., §23.13. An examination of the two acts in question shows that such was the case with the enactment of Chapter 91, Laws of 1937. It is stated in 18 Official Opinions Montana Attorney General 208 (1940):

> "Section 2439 and not Section 2434 is the statute dealing with movie theater licenses. See opinion of the Attorney General, Vol. 16, p. 17. Chapter 91, Laws of 1937, is in conflict with Section 2439 in that it does not exempt a city, town or village where the population does not exceed 1500, and further in that it computes the license fee on a percentage of the gross proceeds of sale, while Section 2439 fixes a flat fee of $25.00 in all cities over 1500 population. Furthermore, Chapter 91 provides for the collection of the license fees by the State Board of Equalization and by the latter paid to the State Treasurer, who shall deposit all fees into the general fund; whereas, under Section 2420 the fees collected under section 2439 are to be paid to the county treasurer, 50% of which are to be retained by the county and the balance paid to the State Treasurer, 45% going to the general fund and 5% to the bounty fund.

> "In view of these conflicts (1) in the movie theaters to be taxed; (2) in the amount of the tax to be paid; (3) in the officers charged with collection; and (4) the use of the funds collected, it is my opinion that Section 2439 is repealed by Chapter 91, Laws of 1937, which, in Section 10, declares that all acts and parts of acts in conflict therewith are repealed."

When speaking of Sections 2439 and 2434, the attorney general was referring to the 1935 Code numbers of sections 84-3205 and 84-3201(2), R.C.M. 1947, respectively.

While opinions of the attorney general, acquiesced in by the legislature, are not binding upon this Court, yet such interpretation is persuasive and will be upheld if not erroneous. State v. Schye, 130 Mont. 537, 305 P.2d 350. We agree with the conclusion that section 84-3205 was repealed by implication for the reasons set forth in the attorney general's opinion; for the reasons that any ambiguities involving tax laws are to be resolved in favor of the taxpayer and against the state; and, that nothing is taxable

unless clearly authorized by statute. Swartz v. Berg, 147 Mont. 178, 411 P.2d 736; Cherry Lane Farms v. Treasurer, Gallatin Co., 153 Mont. 240, 456 P.2d 296; Magnuson v. State Bd. of Equalization, 162 Mont. 393, 513 P.2d 1.

Considering the second issue--whether section 84-3205 was revived by the repeal of Chapter 91, Laws of 1937, -- 1A Sutherland Statutory Construction, 4th Ed., §23.31 states:

> "Under the common law rules of interpretation, the repeal of a repealing statute operates to revive the original enactment where the repeal of the repealing statute is accomplished by express provision without additional legislation upon the subject matter. However, where the repeal of the repealing statute is achieved by specific provision or by implication with new additional legislation on the subject matter, the original legislation is revived only to the extent to which it is consistent with the new legislation.
>
> "The majority of the jurisdictions in the United States have enacted general interpretive provisions to the effect that the repeal of a repealing statute does not revive the original statute. Under these provisions where the repeal of the repealing statute is effectuated by express provision without additional legislation upon the subject matter, the common law is revived. But where the repeal of a repealing statute is claimed by implication, and new additional legislation on the subject matter is enacted, the common law is revived only to the extent that it is not inconsistent with the later legislation. * * *"

Montana is one of the jurisdictions which has enacted a nonrevival provision. Section 43-513, R.C.M. 1947, states:

> "No act or part of an act, repealed by another act of the legislative assembly, is revived by the repeal of the repealing act without express words reviving such repealed act or part of an act."

The legislature in repealing Chapter 91, Laws of 1937, made no express revival of section 84-3205. Therefore, section 84-3205 was not revived and has no force and effect. Neither does the fact that section 84-3205 was carried forward into the Revised Code of Montana, 1947, revive the statute having once been repealed

by implication. State v. Zorn, 99 Mont. 63, 41 P.2d 513; State v. Holt, 121 Mont. 459, 194 P.2d 651.

For these reasons, Carisch is not liable for any license tax on its motion picure theaters. This cause is reversed and remanded to the district court to enter an order accordingly.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices