No. 93-315

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

MARTHA BERLIN and DONALD J. PETERSON,

     Plaintiffs and Respondents,

v.

BRETT A. BOEDECKER and BOEDECKER,
RESOURCES, INC., a Montana corporation,

     Defendants and Appellants.



FILED

JUN 30 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Loren J. O'Toole II, O'Toole & O'Toole,
        Plentywood, Montana

    For Respondents:

        James A. Manley, Manley Law Office,
        Polson, Montana (for Martha Berlin)

        Douglas J. Wold, Wold Law Firm, Polson,
        Montana (for Donald J. Peterson)

Submitted on Briefs:  March 10, 1994

Decided:  June 30, 1994

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendants Brett A. Boedecker and Boedecker Resources, Inc., appeal from a judgment of the Eleventh Judicial District Court, Flathead County, granting respondents Martha Berlin and Donald Peterson damages for their losses in two overriding royalty purchases, and finding that Brett Boedecker breached the parties' oral contract and his fiduciary duty to respondents, and piercing the corporate veil.

We affirm.

The parties raise the following issues:

1. Was respondents' action barred by the doctrine of res judicata?

2. Was respondents' action barred by the doctrine of collateral estoppel?

3. Was respondents' action barred by the statute of limitations?

4. Were the District Court's findings of fact supported by substantial credible evidence?

5. Was respondents' action barred by accord and satisfaction?

6. Did the District Court err when it pierced the corporate veil?

In May 1984, respondent Martha Berlin and her husband, Joe Berlin, lived in Lake County. Martha had investment assets for which Joe acted as her agent. Joe had significant investment experience, but he and Martha had limited experience with

2

investments in oil and gas interests. Previously, the couple had invested in oil wells in Texas. Also at this time, respondent Donald Peterson lived in Flathead County and worked mostly as a fireman. He had substantial experience as a part-time realtor. Previously, Peterson invested in real estate and western art, but had not invested in oil and gas interests.

Appellant Brett Boedecker lived in Glendive and operated through a corporate entity known as Boedecker Resources, Inc. (corporation), a Montana corporation with its principle place of business in Glendive. Brett was an experienced and active investment counselor, landsman, and broker in the field of oil and gas investment interests. He owned approximately 97 percent of the corporation and completely controlled it.

On December 13, 1983, Brett met and entertained the Berlins in Glendive with dinner at his home. Brett's home contained fine art and projected the appearance of wealth and success. There Brett told the Berlins of his vast experience in the oil and gas business. Brett also stated, "I am Boedecker Resources."

The next day, Brett took the Berlins to his office and displayed maps and charts indicating his knowledge and associations in the oil and gas industry. Brett discussed with the Berlins the possibility of purchasing net overriding royalties. Respondents testified that Brett represented these investments as more valuable than producing wells or wells being drilled because the investor could avoid responsibility for development costs.

3

Brett disclosed his past close working relationship with Comdisco, Inc., a New York stock exchange corporation with considerable gas and oil holdings. Brett explained that Comdisco would have first option on any properties or leases available through his or the corporation's services. He also explained that if Comdisco did not exercise its complete option, he could sell or broker the opportunities to other persons or companies. Brett also represented to the Berlins that he had extensive knowledge of Williston Basin and Sceptre Field in Valley County and believed that those areas had the greatest potential for oil discovery and production. However, at the time of the parties' first meeting, the wells under production from the Sceptre Fields had been sold to Comdisco. In November 1983, Brett had negotiated and transacted a sale from Exok, Inc., to Comdisco for almost all of the producing oil and gas interests in the Exok properties located in Valley County. Brett did not disclose this fact to the Berlins. The Berlins and Peterson had expressed their interest to Brett for reasonably short-term investments and production of wells.

Respondents entered into four transactions with Brett and the corporation. However, only two formed the basis of this action. The first of the two disputed transactions was the Exok transaction which involved the purchase of certain overriding royalty interests from a Canadian oil and gas company. Brett was to act as respondents' agent to negotiate the investment. In 1983, Brett's brother, Brooks Boedecker, was one of several landsmen and employees who received part of a package (the Sceptre package) of

4

undivided royalty interests from Sceptre Resources, Inc., the Canadian oil and gas company. In 1983, that company went out of business and gave overriding royalty interests located in several western states to its landsmen as severance payments. Certain of those employees sold their interests, comprising 70 percent of the package, to Exok for $600,000. Brett knew of this sale price, but did not tell respondents of it.

In the Exok transaction, Brett represented to respondents that he could purchase 1400 prime net royalty acres of overriding royalties out of 700,000 gross acres and 45,000 net royalty acres from the Sceptre package. Brett represented that he was informed of the most valuable 1400 royalty acres, and that if respondents purchased an interest immediately, they would have several months to choose the most valuable 1400 royalty acres out of the 45,000 net acres available. In this transaction, Brett also served as Comdisco's agent to locate and negotiate oil and gas interests, for which Comdisco paid Brett a commission.

On December 21, 1983, Brett entered the respondents into what the District Court found was a "secret agreement" with Exok for the purchase of some of the undivided interests in overriding oil and gas royalties of the Sceptre package. Under the agreement, respondents purchased a 1/6 interest in the Exok interests for $53,666, and Brett received a six percent commission. Brett had made this agreement prior to locating respondents as the buyers. The agreement provided, in part, that if Brett could sell by April 8, 1984, for $322,000, Exok would transfer to Brett

5

20 percent of all their royalties within the State of Michigan. Thereafter, Exok would assign to Brett another 20 percent of 1/2 of the remaining assigned royalties, giving Brett a total of 33.5 percent of all the interests. Subsequently, Brett assigned his interests in the Exok overriding royalties to his corporation, effective May 1, 1984. On June 20, 1985, the corporation performed the December 21, 1983, secret agreement when Brett, as their agent, entered respondents into the agreement with Exok. Because of the assignment by Brett to the corporation, Brett was to receive 8280 net royalty acres and some Michigan royalty acres. In total from this transaction, Brett received 5850 net royalty acres of the original Exok purchase, where respondents received only 90 royalty acres. Brett did not reveal this discrepancy to respondents.

Evidence at trial showed that respondents had relied completely upon Brett's advice, counseling, and negotiation to their prejudice. The evidence also showed that respondents did not realize the value or potential losses of the interests Brett was buying for them.

The court found that Brett received commissions from respondents, as their agent, and from Exok, the seller. In addition, the court found that Brett had a fiduciary duty as their agent to fully disclose the material facts and considerations to respondents, as purchasers of the Exok interests. The court found that Brett's transaction with Exok, on behalf of respondents, constituted a clear conflict of interest. The court also found that Brett had determined respondents' purchase price based on his

6

own need under his agreement with Exok, not by an appraisal and investigation of its fair market value. The court reasoned that Brett failed to use reasonable care in investigating and evaluating the investment or give competent, reliable, and accurate information about the assets. Finally, the court found that Brett's breach of his fiduciary duty to respondents resulted in their loss of compensatory damages in the amount of $53,666, less $1000 they recovered in royalties.

The second transaction was the Brooks Boedecker transaction which involved respondents' purchase of certain royalty interests from Brett's brother, Brooks. At the parties' original meeting in Glendive, Brett introduced respondents to Brooks. Brooks owned a ten percent interest in the Sceptre package, which was worth $100,000 at the time of its transfer to him. After Brett purchased an interest for respondents in Exok, respondents came into contact with Brooks in Denver, Colorado. Respondents and Brooks entered into an agreement to purchase certain of Brooks' royalty interests. Testimony conflicted as to whether Brett had advised respondents to contact Brooks. Brooks offered to sell respondents his Sceptre package interest for $500,000. Unaware of the package's real value, respondents agreed to purchase only 1/2 of the interest for $250,000.

The court found that between the time of the original Exok transfer on October 8, 1983, and the time Brett purchased respondents' Exok interest, no producing wells had been drilled. Meanwhile, Brett had entered into the secret agreement with Brooks

7

and others. The court found that the sale to respondents by Brooks aided in completing the Exok agreement managed by Brett, thereby meeting its time table. As a result of the Brooks transaction, Brooks received the Michigan overriding royalties and Brett received a commission from respondents in the amount of $15,000. Respondents did not know that Brooks had paid Brett a $15,000 commission for the Brooks transaction.

The court found that Brett and/or the corporation failed to advise respondents that the amount of interest they were purchasing for $250,000--only a five percent interest in the Sceptre package-- sold several months previously for $50,000, five times less than what they had paid. In addition, the court found that Brett had a conflict of interest by reason of the execution of the secret agreement of December 21, 1983. There Brett stood to make a pecuniary gain through the agreement. The court also found that Brett demanded a $15,000 commission from Brooks, knowing that respondents had paid a highly inflated price for the Exok transaction. Thereby, Brett improperly had ratified the Brooks transaction without his full involvement in the transaction, as respondents' agent. Finally, the court found that Brett breached his contractual obligation and fiduciary duty as respondents' agent to properly advise them of true and material facts.

The court found that respondents were prejudiced. The Brooks transaction produced no overriding royalties for respondents and they lost $229,233--$214,233 in cash and art, and $15,000 as a commission to Brett. However, the court found that because

8

respondents entered into the contract with Brooks without at least fully consulting Brett, 50 percent of the damages were attributable to their own actions. The court apportioned 1/2 the damages, or $114,616.50, to Brett and/or the company for the Brooks transaction.

The court also found that the facts required piercing of the corporate veil of Boedecker Resources, Inc. The court found Brett and the corporation jointly and severally liable. The total amount of respondents' judgment was $167,282.50, plus their costs of suit. The court did not award punitive damages against Brett.

## ISSUE 1

Was respondents' action barred by the doctrine of res judicata?

Appellant argues that res judicata should have barred litigation of the action below because the two disputed transactions were the same subject matter of certain testimony by respondent, Peterson, and by respondent Martha Berlin's husband, Joe Berlin, in a prior trial between the parties. Appellant asserts that respondents already had the opportunity to litigate the two transactions in the prior case, and should not have been allowed to "relitigate" the transactions in the present action.

Res judicata is in the nature of claim preclusion and is a remedy where a claim has been previously litigated. Lancaster v. Department of Justice, Div. of Motor Vehicles (1985), 218 Mont. 97, 99, 706 P.2d 126, 128. This Court recently reaffirmed its long-time holding that a claim may be barred on the basis of the

9

doctrine of res judicata if the following elements are present: (1) the parties or their privies are the same; (2) the subject matter of the action is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject and to the issues between them. Davis v. Church of Jesus Christ (1993), 258 Mont. 286, 301-02, 852 P.2d 640, 650.

In its order on appellant's motion for summary judgment and respondents' motion to amend the complaint, the court found that "for all practical purposes, the parties or their privies were the same and the capacities of the persons were the same in reference to the subject matter and the issues between them." In addition, the court found that the second and third elements of the Davis test were lacking. The court reasoned that the subject matter in the two actions was not the same, and the issues were not the same or related to the same subject matter. Specifically, the court found that the subject matter of the earlier action between the parties was a written and express contractual relationship pertaining to a Dawson County acquisition program. On the other hand, the court found that the subject matter of the present action was "an oral agreement whereby [appellant] was to act as an advisor or agent [for respondents] for investments in the oil and gas industry generally, and specifically, as to a portion of the Sceptre Package in May of 1984." For res judicata to bar a subsequent action, there must be a precise identity of the issues. In re Marriage of Stout (1985), 216 Mont. 342, 701 P.2d 729.

10

The subject matter of the Dawson County action was the parties' fourth transaction which involved a lease play contract occurring entirely in that county in April through August 1984. At issue in that action was whether appellant, as an individual and corporate officer, breached the parties' Letter Agreement of July 5, 1984. In addition, that suit alleged that appellant committed fraud and breached his fiduciary duty to respondents.

In contrast, the present action involved the first and third of the parties' four transactions. The contracts in the two actions were separate and the contracts' values differed. The locations of the oil and gas interests in the contracts also differed. Finally, the tortious conduct alleged by appellants in the present action differed from that in the fourth transaction, involving a different fraudulent scheme.

Respondent chose not to join the actions, pursuant to Rule 18(a), M.R.Civ.P., and both actions were litigated simultaneously. Appellant did not move to dismiss the Flathead County action. Only after success in the Dawson County suit did appellant argue that judgment affected or barred the Flathead County suit. In the Dawson County suit, appellant objected to respondent Peterson's and Joe Berlin's testimony about the prior transactions, the subject of the present suit, on the grounds that it was irrelevant. However, on appeal appellant argues that this testimony raised the issues presented in the present suit, which amounted to actual litigation of these issues. In essence, appellant now argues that the testimony in the Dawson County suit

11

was clearly relevant to the present suit. Appellant's argument that the Dawson County suit testimony amounted to an opportunity for respondents to litigate the subject matter of the present action is without merit. The court allowed the testimony because it provided a background on the parties' series of transactions and their relationship.

In like manner, appellant argues that the issues presented in this action are the same because the jury was asked to determine a breach of contract, breach of a fiduciary duty, breach of an implied covenant of good faith and fair dealing, and fraud. Although these theories of recovery were the same as those used in the Dawson County action, they were not related to the same subject matter. The two actions were relevant to one another, however, the issues were not precisely the same. Therefore, the doctrine of res judicata does not apply.

We agree with the District court and hold that respondents' present action was not barred by res judicata.

ISSUE 2

Was respondents' action barred by the doctrine of collateral estoppel?

Appellant argues that the issues in the Dawson County case and this case are identical, and that the parties' or their privies previously had full opportunity to litigate them, and in fact did litigate them. Therefore, he argues that respondents should have been barred from relitigating the issues based on the doctrine of collateral estoppel.

12

Collateral estoppel is in the nature of issue preclusion. Collateral estoppel may bar an action if: (1) the issue has been decided in a prior adjudication and is identical to the one presented; (2) a final judgment on the merits was issued; and (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication. Anderson v. State (1991), 250 Mont. 18, 21, 817 P.2d 699, 701. We have said that of the criteria required to establish collateral estoppel, identity of issues is the most important and requires that the precise question has been litigated in the prior actions. Stapleton v. First Sec. Bank (1983), 207 Mont. 248, 258, 675 P.2d 83, 89.

The court determined that the issues and the underlying facts raised in the two actions were not identical. The court reasoned that there "can be no question that the transaction forming the basis of the Dawson County case is separate from the "Sceptre Package" and "Brooks" transactions . . . [because] those transactions and underlying facts were not necessary to a determination of the Dawson County litigation." We agree.

The record shows that the subject matter of the two actions and the relationship of the issues to the subject matter were not the same. The Dawson County case involved a written and express contractual relationship pertaining to a Dawson County acquisition program. On the other hand, the subject matter of the present action was an oral agreement between the parties that appellant was to act as respondents' agent for the investment of their monies in certain oil and gas overriding royalty interests. This agreement

13

affected the Sceptre or Exok transaction of May 1984, and the Brooks transaction, not the Dawson County action.

Although the party against whom respondents pled was the same party in both actions, we conclude that the issue presented here was not identical to the one in the Dawson County case. A final judgment on the merits of this case did not occur there.

We hold that respondents' action was not barred by collateral estoppel.

ISSUE 3

Was respondents' action barred by the statute of limitations?

Appellant argues that the District Court erred when it allowed joinder of Boedecker Resources, Inc., to the suit, 7½ years after the transactions in question. Appellant asserts that no statute of limitations exists that could relate back that far in this cause of action. Finally, appellant asserts that because this was respondents' third suit against Brett Boedecker, there was no valid reason for respondents to have failed to join Boedecker Resources, Inc., as a party so late.

The transactions and their corresponding activities occurred in 1984 and 1985. On December 1, 1986, respondents filed their complaint in this action. On January 6, 1992, three weeks after Brett's deposition, respondents moved for leave to join the corporation as an additional defendant, pursuant to Rule 15(c), M.R.Civ.P. On February 19, 1992, the District Court allowed the joinder of Boedecker Resources, Inc., as a defendant.

14

The Montana Rules of Civil Procedure include a relation-back doctrine for the amendment of complaints. See Rule 15(c), M.R.Civ.P. A party may amend a complaint to change the party against whom the claim is asserted, and the claim will relate back whenever:

> (1) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and within the period provided by law for commencing the action against the party to be brought in by amendment; (2) that party has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits; and (3) the party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Rule 15(c), M.R.Civ.P. In addition, "[p]arties may be dropped or added by order of the court on motion of any party of its own initiative at any stage of the action and on such terms as are just." Rule 21, M.R.Civ.P. (Emphasis added).

We have said that joinder is to be liberally allowed under Rule 21, M.R.Civ.P. White v. Lobdell (1984), 208 Mont. 295, 306, 678 P.2d 637, 642.

Respondents' amendment to join the corporation satisfied Rule 15(c), M.R.Civ.P. The joined party was involved in the transactions at issue in this action. Brett, acting as Boedecker Resources, Inc., represented that he would be respondents' agent for purposes of investing their monies in oil and gas interests. Respondents filed their original action within the period provided by law for commencing the action against the party to be brought in by amendment--the corporation. Brett, acting for himself and as an

15

agent for Boedecker Resources, Inc., received notice of the institution of the action, and therefore, was not prejudiced in maintaining a defense on the merits. Because Brett was already a party/defendant, he knew of the lawsuit. The corporation's dealings with respondents put Brett on notice that the corporation was potentially liable. Brett was on notice that, but for a mistake concerning the identity of the proper party, the action would have been brought against the corporation. Brett had stated to respondents on their first meeting, "I am Boedecker Resources." The District Court found Brett's representation was accurate and that respondents had relied on that statement. The record shows that Brett had intermingled the corporation's assets extensively with his own after entering into the Sceptre package transaction with respondents.

Joinder of the corporation was proper because the amendment related back to the date of the filing of the action, in accord with Rule 15(c), M.R.Civ.P. Therefore, we hold that the joinder and the action was not barred by the statute of limitations.

ISSUE 4

Were the District Court's findings of fact supported by substantial credible evidence?

Appellant seems to argue that substantial credible evidence was not presented at trial to support the trial court's findings of fact regarding the following:

(1) The "secret agreement", wherein Brett was to receive an overriding royalty interest in the remaining acreage of the Exok purchase; (2) The failure of Brett and/or the corporation to disclose the sale of production to

16

Comdisco; (3) That appellants did not use reasonable care in evaluating and investigating the Exok interests or in advising respondents; and (4) Brett's alleged failure to consult respondents in the Brooks transaction.

These contentions involve almost all the issues raised at trial.

Our standard of review of a trial court's findings of fact is whether the findings are clearly erroneous. Further, we will examine whether: (1) the findings are supported by substantial credible evidence; (2) whether the trial court misapprehended the effect of the evidence; and (3) whether we are left with a definite and firm conviction that a mistake has been committed. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. In addition, we will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

The court's finding that respondents were unaware of the "secret agreement" is supported by substantial credible evidence. Martha Berlin and Don Peterson each testified that years after the transaction they found out that Brett was to receive an overriding royalty interest in the remaining acreage of the Exok purchase. They also testified that each would not have entered into the agreement had they known that Brett would have received a substantial windfall from Exok by selling them a small package in a short period of time. The court was entitled to judge respondents' credibility. Rule 52, M.R.Civ.P.

Substantial credible evidence supports the court's finding that Brett and/or the corporation failed to disclose the sale of production to Comdisco. This non-disclosure was evidenced by the

17

testimony of Berlin and Peterson. Again, the court was permitted to judge their credibility.

Substantial credible evidence supports the court's finding that Brett did not use reasonable care in evaluating and investigating the Exok interests or in advising respondents. Two of Brett's witnesses testified that he used reasonable care in evaluating and investigating the Exok interests or in advising respondents. However, documentary evidence presented at trial showed that Brett conducted no evaluation or process of selection for the acreage he was to purchase for respondents. The record shows that the acreage Brett sold to respondents was pre-selected before Brett became involved in the resale of the Sceptre package to Comdisco and respondents, and that he did not have the opportunity to select the best acreage for respondents.

Finally, substantial credible evidence supported the court's finding that Brett failed to consult respondents in the Brooks transaction. The record shows that in October 1983, several of the other owners of the 1/10 interest in the Sceptre package had sold their interests for $100,000. The record reflects conflicting testimony as to whether Brett advised respondents to seek out Brooks in Denver for a possible investment. However, respondents testified that Brooks did not inform them of the price for which the other owners of the Sceptre package had sold their interests. Brooks proceeded to offer his 1/10 interest to respondents for $500,000. Respondents purchased 1/2 of Brooks' interest for $250,000. The record also shows that Brett received commission

18

payments from Brooks as a result of this transaction. The court found that neither Brooks nor Brett, as respondents' agent, disclosed the interest's real value to them. Berlin and Peterson testified that had they known of its fair value, they would not have purchased Brooks' interest. The evidence supports the District Court's findings.

Review of the record also shows that the court did not misapprehend the effect of the evidence, and we are not left with a definite and firm conviction that a mistake has been committed.

We hold that the District Court's findings of fact are supported by substantial credible evidence on these issues and are not clearly erroneous.

### ISSUE 5

Was respondents' action barred by accord and satisfaction?

During trial, appellant made a motion based on accord and satisfaction, and the court denied the motion. On appeal, appellant argues that because in 1985 Brooks and respondents had renegotiated the $250,000 purchase in the 1984 Brooks transaction, respondents cannot now maintain a suit against Brett or the corporation regarding that transaction because of an accord and satisfaction between them and Brooks. In 1985, Brooks and respondents renegotiated the Brooks transaction whereby respondents were to receive all of Brooks' interest, excluding his Michigan interests, for $214,233.

An accord and satisfaction extinguishes only the obligation between the parties to the agreement. See §§ 28-1-1401 and -1402,

19

MCA. Accord and satisfaction in the Brooks transaction occurred between Brooks and respondents in 1984, and again in 1985, upon modification of their contract. The accord and satisfaction occurred only for that transaction, but did not serve to release Brett from his potential liability to respondents as their agent in either the Sceptre or Brooks transactions.

Appellant's argument has no merit. We hold that respondents' action was not barred by accord and satisfaction.

ISSUE 6

Did the District Court err when it pierced the corporate veil?

Appellant asserts that the District Court erred when it found that Brett Boedecker was the alter ego of the corporation. Appellant argues that he did not make the corporate decisions alone on all the issues, but collaborated with his wife, who was secretary for Boedecker Resources.

We have defined a two-prong test for piercing the corporate veil. First the trier of fact must find that the defendant was either the alter ego, instrumentality, or agent of the corporation. Drilcon, Inc. v. Roil Energy Corporation, Inc. (1988), 230 Mont. 166, 176, 749 P.2d 1058, 1065. Second, the trier of fact must find evidence that the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong, or perpetrate fraud." Drilcon, 749 P.2d at 1065.

The District Court found that the actions of the corporation and Brett were interchangeable, as the corporation's assets were constantly intermingled with Brett's individual assets. The court

20

found that Brett owned 97 percent of the corporate stock, was its president, and completely controlled the corporation. As a result, the court found that respondents' remedy was for joint and several liability of the corporation and Brett.

The record shows that the royalties in the Exok transaction were to be assigned to Brett, but the actual royalties became assigned to the corporation. In another transaction, Brett transferred certain Flathead County property from the corporation to himself and his wife for no consideration. In addition, Brett told respondents at their first meeting, "I am Boedecker Resources." The record shows that Brett executed all relevant documents regarding the transactions between the parties, where his wife was involved in none of them. Generally, the record shows that Brett had a continuous course of dealing with respondents where he was in complete control of the corporation, and the gain was for him individually, not for the corporation. The evidence is substantial that Brett was the alter ego of Boedecker Resources, Inc., in all his transactions with respondents.

Finally, the evidence showed that Brett used the corporate entity of Boedecker Resources as a subterfuge to justify wrong and perpetrate fraud against respondents. From his first dealings with respondents while entertaining them in his home, and his impressive display of maps, charts, and associations in the oil and gas industry, Brett perpetrated fraud against respondents.

We agree with the District Court that these actions by Brett were "sufficient enough to demonstrate to [respondents] that Brett

21

and/or the Corporation had not only extensive, but impressive knowledge and association, in the oil and gas industry and was such [as] to justify an expectation of trust and confidence in Brett's success, knowledge and reliability." Brett made misrepresentations to respondents that he could choose the most valuable 1400 acres available from the Sceptre package. He misrepresented that the net royalty interests purchased by respondents would be valuable investments. Brett failed to reveal the discrepancy between the 5850 net royalty acres he was to receive from the Exok transaction, and the 90 royalty acres respondents were to receive. Finally, Brett did not disclose to respondents the full value or potential problems and losses of what they were buying.

The record contains substantial credible evidence upon which the District Court concluded that Brett was the corporation's alter ego and that Brett used the corporate entity to perpetrate fraud against respondents. The court properly determined that Boedecker Resources' corporate veil should be pierced and that the corporation and Brett should be jointly and severally liable.

We hold that the District Court did not err when it pierced the corporate veil.

Affirmed.

_____
Justice

We concur:

_____

22

Karla M. Gray

_____

_____

_____
Justices

June 30, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Loren J. O'Toole, II
O'Toole & O'Toole
P.O. Box 529
Plentywood, MT 59254-0529

James A. Manley
Manley Law Office
201 Fourth Ave. E.
Polson, MT 59860

Douglas J. Wold
Wold Law Firm
P.O. Box 1212
Polson, MT 59860


                                        ED SMITH
                                        CLERK OF THE SUPREME COURT
                                        STATE OF MONTANA

                                        BY: _____
                                            Deputy