No.  95-175

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

LEWIS S. ROBINSON, III, et al.,

      Plaintiffs and Appellants,

  v.

FIRST WYOMING BANK, N.A. JACKSON HOLE,
a Wyoming corporation, and FIRST WYOMING
BANCORPORATION, a Wyoming corporation,

      Defendants and Respondents.

FILED

DEC 19 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

         Michael J. Lilly, Berg, Lilly, Andriolo
         & Tollefsen, Bozeman, Montana

      For Respondents:

         Malcolm H. Goodrich, Crowley, Haughey, Hanson,
         Toole & Dietrich, Billings, Montana


Submitted on Briefs:  November 9, 1995

Decided:  December 19, 1995

Filed:

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal of an order of the Eighteenth Judicial District Court, Gallatin County, denying Lewis S. and Linda T. Robinsons' motion to quash a writ of execution issued on a Wyoming judgment in favor of Key Bank of Wyoming, formerly First Wyoming Bank (the bank), and a subsequent order granting summary judgment in favor of the bank on the Robinsons' declaratory judgment action. We reverse in part and affirm in part.

We restate the issues as follows:

1.   Are the Robinsons barred from appealing the District Court's April 14, 1994, order denying their motion to quash the bank's writ of execution?

2.   Did the District Court err in ruling that 28 U.S.C. § 1963 created a new judgment for purposes of the six year period during which a writ of execution can be issued?

3.   Did the District Court err in failing to determine that the bank should have complied with the Uniform Enforcement of Foreign Judgments Act when it registered the Wyoming consent judgment in Montana state court?

4.   Did the District Court err in granting summary judgment in favor of the bank on the Robinsons' declaratory judgment action?

FACTS

The Robinsons executed a promissory note in favor of the bank on March 22, 1985, in the amount of $353,161.  On August 30, 1985, the Robinsons gave the bank a mortgage on property in the Gallatin

2

Valley (the property) as security for the promissory note. The mortgage had an effective date of March 22, 1985.

In the mid-1980s, the Robinsons and the bank became involved in litigation in Wyoming over a variety of issues arising from the bank's treatment of the Robinsons. The Robinsons sued the bank for fraud, breach of contract, breach of fiduciary duty, RICO, negligence, and punitive damages. The bank counterclaimed against the Robinsons for payment of the promissory note together with other outstanding obligations. The bank and the Robinsons entered into a judgment by stipulated consent in which the Robinsons agreed to pay the bank $175,000. This payment was intended to completely replace the amount previously owed under the promissory note. The judgment on this amount was entered in the Wyoming Federal Court on December 3, 1987. It was not appealed by the Robinsons.

The Wyoming consent judgment was registered in the United States District Court for Montana on August 1, 1989, pursuant to 28 U.S.C. § 1963. On November 27, 1991, the bank filed a transcript of the Montana federal court judgment with the Gallatin County Clerk of Court. The bank caused the clerk of court to issue four different writs of execution but the first three were returned unsatisfied. The fourth writ was issued on December 16, 1993, and was served on the Robinsons on January 3, 1994. On February 4, 1994, the Robinsons moved to dismiss the verified application for sale of the property and to quash the writ.

On February 2, 1994, the Robinsons filed a completely separate action against the bank seeking to have the bank's mortgage

3

declared null and void.  The bank filed a motion with the District Court to dismiss this action.  Later, the bank moved to convert their motion to dismiss to a motion for summary judgment.

On April 7, 1994, the Robinsons moved to consolidate the two actions, which the court did on May 6.  On April 14, 1994, the court denied the Robinsons' motion to quash the writ and ruled that the filing of the December 3, 1987, Wyoming judgment with the Montana Federal Court on August 1, 1989, was the equivalent of filing a new judgment.  In its conclusion, the court determined that the six years for issuing a writ of execution on that judgment ran from August 1, 1989.

On May 2, 1994, the Robinsons moved the court to reconsider its April 14 order.  On May 6, 1994, when the court had entered the order consolidating the two cases, it also noted that the bank's motion to dismiss would be converted to a motion for summary judgment.  On June 17, 1994, the court denied Robinsons' motion for reconsideration of its April 14 order.

The court entered an order granting summary judgment in favor of the bank and against the Robinsons on February 2, 1995.  From both the April 14, 1994, and the February 2, 1995, orders, the Robinsons appeal.

ISSUE 1

Are the Robinsons barred from appealing the District Court's April 14, 1994, order denying their motion to quash the bank's writ of execution?

4

The bank contends that the April 14, 1994, order was a post-judgment order and a "special" order capable of appeal under Rule 1(b)(2), M.R.App.P. Thus, the time for its appeal expired on May 14, 1994, and the Robinsons' February 23, 1995, appeal of this order should be dismissed. The Robinsons counter that once the cases were consolidated on May 6, the order became an interlocutory order in the consolidated appeals. As a result, the Robinsons contend the April 14 order was not subject to appeal at that time. See Rule 1, M.R.App.P.; Matter of Sage Creek Drainage Area (1988), 234 Mont. 243, 763 P.2d 644.

The bank asserts that the order was entered prior to the consolidation of the actions and cannot be viewed as an interlocutory order in the consolidated proceedings. Other supreme courts, however, have held that once cases are consolidated they are one for all appellate purposes. Mallin v. Farmers Ins. Exchange (Nev. 1990), 797 P.2d 978, 980; State v. District Court of Second Judicial District (Wyo. 1963), 387 P.2d 550. In concurring with this principle, the Ninth Circuit Court said:

> In our view, the best approach is to permit the appeal only when there is a final judgment that resolves all of the consolidated actions unless a 54(b) certification is entered by the district court. This leaves the discretion with the court which is best able to evaluate the affect [sic] of an interim appeal on the parties and on the expeditious resolution of the entire action.

Huene v. United States (9th Cir. 1984), 743 F.2d 703, 705 (alteration in original).

5

In the present case, the order in question was issued on April 14, 1994, which gave the Robinsons until May 14, 1994, in which to file an appeal with this Court. The actions were consolidated on May 6, 1994. Thus, the consolidation postponed the time for appeal of the order to that of the court's final judgment in the consolidated actions. We therefore hold that the substance of the April 14, 1994, order is properly before this Court.

ISSUE 2

Did the District Court err in ruling that 28 U.S.C. § 1963 created a new judgment for purposes of the six year period during which a writ of execution can be issued?

The Wyoming federal court judgment was registered in Montana federal court pursuant to 28 U.S.C. § 1963. That section provides: "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." The District Court concluded that registration under this statute created a new judgment so that the date of the Wyoming judgment for purposes of the issuance of a writ of execution is the date that the judgment was registered in Montana federal court. The Robinsons disagree, contending that the plain language of § 1963 requires the six year period during which a writ of execution can be issued under § 25-13-101, MCA, to commence upon the date the judgment was docketed in Wyoming--December 3, 1987.

The District Court's conclusion was in response to a question of law. Accordingly, we will review questions of law to determine

6

if the district court's interpretation is correct. Farmers Plant Aid, Inc. v. Huggins (1994), 266 Mont. 249, 252, 879 P.2d 1173, 1175. Federal courts have ruled inconsistently on whether the registration of a judgment pursuant to 28 U.S.C. § 1963 creates a new judgment date. Compare Juneau Spruce Corp. v. International Longshoremen's and Warehousemen's Union (U.S.D.C. Haw. 1955), 128 F. Supp. 697, with Stanford v. Utley (8th Cir. 1965), 341 F.2d 265, and United States v. Kellum (5th Cir. 1975), 523 F.2d 1284.

The Ninth Circuit Court, in Marx v. Go Publishing Co. (9th Cir. 1983), 721 F.2d 1272, ruled that § 1963 created a new judgment when it was filed in federal court. In that opinion, however, the court looked to California state law and determined that "[u]nder analogous California law, the ten year period for a valid and enforceable judgment of a sister state runs anew from the time of its filing in the state superior court . . . ." Marx, 721 F.2d at 1273. The court then stated "[w]e discern no reason why the statute of limitations rule of the state should not apply to the federal proceedings." Marx, 721 F.2d at 1273.

When the Wyoming judgment was registered in Montana federal court, Montana had not yet adopted the Uniform Enforcement of Foreign Judgments Act. Section 25-9-303, MCA, provided for the registration of a federal judgment in state court, however, it was limited to judgments rendered in the Circuit or District Court of the United States, Ninth Circuit, District of Montana. This statute does not address the registration of judgments of a sister state, as did the California statute in Marx. Therefore, we have

7

no analogous state authority upon which to rely at the time the judgment was registered and <u>Marx</u> is inapplicable.

While the Eighth Circuit, in <u>Stanford</u>, held that registration under § 1963 provided the equivalent of a new judgment in the registration court, the issue presented in <u>Stanford</u> is distinguishable from the issue presented in this case. In <u>Stanford</u>, a 1956 Mississippi federal judgment was registered that year in Missouri federal court pursuant to § 1963. Mississippi had a seven year period of limitations, while Missouri had a ten year period of limitations. The judgment creditor sought to discover Missouri assets more than seven but less than ten years after registration of the judgment in Missouri. The district court quashed the action, reasoning that the judgment was dead under the Mississippi seven year period of limitations. The Eighth Circuit found that the Missouri registration equated to a new Missouri federal judgment and went on to hold that:

> It follows from this that the Missouri ten year period of limitations, provide by V.A.M.S. § 516.350, and not the Mississippi seven year period, applies so far as enforcement is concerned, and that execution proceedings by the plaintiff within the Missouri period, and otherwise proper, are not subject to dismissal.

<u>Stanford</u>, 341 F.2d at 268.

In <u>Stanford</u>, the Court applied the Missouri ten year period of limitations which allowed the enforcement of the judgment not only from the date of registration, but also from the date the judgment was originally docketed in Mississippi. After discussing the

8

number of questions that their decision would leave unanswered, the Court in Stanford limited their holding:

> The presence of these and undoubtedly many other questions prompts us to emphasize that the conclusion we reach here is one having application to the fact situation of this case. We do not now go so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; neither do we say that it fails to do so for any particular purpose.

Stanford, 341 F.2d at 271.

The Fifth Circuit recognized in Kellum that Stanford did not hold that registration created a brand new judgment to be enforced as if there had never been a prior judgment in the case. Kellum, 523 F.2d at 1289. The Ninth Circuit, in Matanuska Valley Lines, Inc. v. Molitor (1966), 365 F.2d 358, also found that the rule in Stanford was limited and stated "the holding of the Eighth Circuit court relates to the effect of valid registration upon subsequent enforcement proceedings." Matanuska, 365 F.2d at 360. In this case, there is no issue as to valid registration of the Wyoming federal judgment in the Montana federal court because the judgment was still a "live" judgment under the laws of Wyoming at the time it was registered. See Wyo. Stat. § 1-17-307.

Regardless of whether Stanford stands for the proposition that § 1963 creates a new judgment in the registering state, that interpretation of § 1963 has the deleterious effect of nullifying the limitation period in both the issuing state and the registration state. In Wyoming, for example, a judgment becomes dormant after five years if an execution is not issued within that period

9

although it may be revived under certain circumstances. See Wyo. Stat. §§ 1-16-502 and 1-17-307. Under the bank's theory, if a judgment creditor registered the judgment in Montana pursuant to § 1963 within five years after it was docketed in Wyoming, they would have an additional six years to obtain a writ of execution in Montana without leave of court and four additional years to obtain a writ with leave of court. This extends the period in which to execute the judgment to fourteen years, which is beyond either the Montana or Wyoming limitation. Such a result is repugnant to the laws of both states. See Powles v. Kandrasiewicz (W.D.N.C. 1995), 886 F. Supp. 1261.

We therefore adopt the analysis of the United States District Court in Juneau which reviewed the legislative intent of the enactment of 28 U.S.C. § 1963 and concluded that "the plain and simple purpose of the statute is enforcement of the original judgment." Juneau, 128 F. Supp. at 700 (citing 1954 U.S.C.C.A.N. 3142, where Congress stated the original purpose of the statute while discussing an amendment which extended the scope of § 1963 to the district court of Alaska). The Juneau court determined "[r]egistration is purely a ministerial act in the enforcement of a foreign judgment [by reason that i]t confers upon this court no power to alter the judgment itself." In contrast, a suit upon a judgment differs from a registration in that a suit "is a new and independent action, not ancillary to the original action." Juneau, 128 F. Supp. at 699.

10

Clearly there is an intended difference in bringing a separate action for the enforcement of a judgment and in merely registering a judgment where both creditors and debtors are relieved of the additional cost and harassment of further litigation. See 1954 U.S.C.C.A.N. 3142. This difference reflects the ministerial effect of registration under 28 U.S.C. § 1963 and that registration should not cause a new judgment date.

We hold that the six year period during which a writ of execution can be issued under § 25-13-101, MCA, commences on the date the judgment was docketed in the original forum when a judgment is filed in Montana federal court pursuant to § 1963. We therefore conclude the District Court erred when it held that 28 U.S.C. § 1963 created a new judgment for purposes of the six year period during which a writ of execution can be issued and we reverse the District Court on that issue. As a result of this holding, the period during which the bank could cause a writ to be issued began to run from the date of the Wyoming judgment, December 3, 1987. The six year period referenced in § 25-13-101, MCA, expired on December 3, 1993, thus barring the writ issued on December 16, 1993.

## ISSUE 3

Did the District Court err in failing to determine that the bank should have complied with the Uniform Enforcement of Foreign Judgments Act when it registered the Wyoming consent judgment in Montana state court?

11

The Robinsons claim that the bank did not comply with the procedures set forth in the Montana Uniform Enforcement of Foreign Judgments Act, §§ 25-9-501 to -508, MCA. The District Court, in its April 14, 1994, order, noted that the Uniform Act was not in effect at the time the Wyoming judgment was registered in Montana federal court. The court went on to find that there was nothing in the record to indicate that the bank did not comply with the procedures set forth in 28 U.S.C. § 1963. The court concluded that the Uniform Act did not apply retroactively to the bank under the facts of this case.

We will review a district court's conclusion of law for its correctness. <u>Farmers Plant Aid</u>, 879 P.2d at 1175. The District Court was correct in that the Uniform Act did not apply to the registration of the Wyoming judgment in the Montana federal district court. However, the judgment was then filed in state district court subsequent to Montana's adoption of the Uniform Act. The Robinsons assert that the Uniform Act should have been followed by the bank when it filed the Montana federal court judgment in the Montana district court. Contrarily, the bank argues that a foreign judgment under the Uniform Act should be construed to mean a judgment of any non-Montana federal or state court. Under the bank's reasoning, the bank should not be obliged to follow the Act where the federal court and the state court in which the federal judgment is filed are located in the same state.

Section 25-9-502, MCA, in the Uniform Act defines a "foreign judgment" to mean "a judgment, decree, or order of a court of the

12

United States or of any other court which is entitled to full faith and credit in this state." Where the language of a statute is clear and unambiguous, we look no further than to the plain meaning of the statute for its interpretation. Howell v. State (1994), 263 Mont. 275, 284, 868 P.2d 568, 573. The Uniform Act clearly applies to federal court judgments registered in state district courts regardless of whether the federal court is located in the same state as the state court.

Our holding that the Uniform Act applied to the registration of Montana as well as non-Montana federal court judgments is not dispositive of this issue. We earlier cited § 25-9-303, MCA, which provides for the filing of a transcript of a Montana federal court judgment in state court. This statute, enacted in 1927, is not referenced in the Uniform Act and provides, in part, as follows:

> **25-9-303. Filing of transcript of docket of federal court -- lien -- expiration.** (1) A transcript of the original docket of a judgment that is rendered in the circuit or district court of the United States, ninth circuit, district of Montana, and that is certified by the clerk of court may be filed with the district court clerk of any county. From the time of the filing, the judgment becomes a lien upon all real property of the judgment debtor that is not exempt from execution in the county and that is either owned by the judgment debtor at the time or afterward acquired by the judgment debtor before the lien expires. Except as provided in subsection (2), the lien continues for 6 years unless the judgment is previously satisfied.

Given the continued vitality of that statute and the oft-stated rules that a repeal of a statute by implication is disfavored, § 25-9-303(1), MCA, provides an alternative method for filing a judgment of a Montana federal court in Montana state court

13

in addition to the procedure under the Uniform Act. The bank, in filing a "Transcript of Judgment" from the Montana federal court in the Montana state court, complied with § 25-9-303(1), MCA.

We hold that the bank was not required to register the judgment in Montana state court under the Uniform Act because the bank had the option of filing the judgment pursuant to § 25-9-303(1), MCA. Our holding in Issue 2 that the December 16, 1994, writ of execution was defective does not render this point moot since the transcript of judgment was properly filed pursuant to § 25-9-303(1), MCA, and the bank could request leave of court to have the clerk of court issue a writ pursuant to § 25-13-102, MCA.

## ISSUE 4

Did the District Court err in granting summary judgment in favor of the bank on the Robinsons' declaratory action?

The Robinsons brought an action in District Court for a declaratory judgment ordering that the mortgage the bank held on the Robinsons' Montana property be declared null and void. In that action, the Robinsons claimed the bank's mortgage was invalid for two reasons--there was a failure of consideration for the mortgage and the eight-year statute of limitations for foreclosing on a mortgage, § 27-2-202(1), MCA, had expired.

The Robinsons also claimed that the mortgage slandered the title to their property. They did not, however, set forth an argument for their claim of slander in either the District Court or this Court, and therefore, we will not address the merits of that

14

claim.  See Alamaras v. Yellowstone Basin Properties (1991), 248 Mont. 477, 483, 812 P.2d 770, 773.

In considering the Robinsons' first two claims, the District Court granted summary judgment in favor of the bank.  The court determined that there were no questions of fact and the bank was entitled to judgment as a matter of law.  The standard we employ in reviewing a district court's summary judgment is the same as that employed by the district court.  Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Klawitter v. Dettmann (Mont. 1995), 51 St. Rep. 1296.

The Robinsons claim a question of fact exists as to whether consideration was given for the mortgage.  The court determined that the Wyoming judgment resolved the issue of whether there was consideration for both the promissory note and the mortgage executed by the Robinsons.  The court concluded there was no question of fact and principles of res judicata barred relitigation of this claim as a matter of law.  The Robinsons assert that the Wyoming consent judgment was based solely on consideration for the promissory note, while the mortgage is the subject of the present action.

The Wyoming consent judgment, however, stated that "[a]ll mortgages and security interests . . . shall . . . secure the payment of this judgment." By this statement, the Robinsons agreed that the consideration for the mortgage is security of the judgment.  The Robinsons did not appeal the consent judgment.

15

In HKM Assoc. v. Northwest Pipe Fittings (Mont. 1995), 900 P.2d 302, 305, 52 St. Rep. 692, 694, we set out a three-part test for collateral estoppel.

> Collateral estoppel bars an action . . . when: (1) the issue presented in a later action has been decided in a prior adjudication; (2) a final judgment in the action was issued; and (3) the party against whom collateral estoppel is asserted was a party to the previous litigation.

HKM Assoc., 900 P.2d at 305 (citing Berlin v. Boedecker (1994), 268 Mont. 444, 453, 887 P.2d 1180, 1185; Farmers Plant Aid, 879 P.2d at 1176. In the instant case, the Robinsons raise the issue of whether there was consideration for the mortgage. The Wyoming consent judgment recognized that the mortgage was valid and secured payment of the judgment thereby resolving the identical issue now presented. Additionally, there was a final judgment that held the mortgage was valid, and finally, the Robinsons were a party to both the Wyoming judgment and the declaratory action before us. We therefore conclude that the Robinsons are estopped from claiming there was no consideration for the mortgage.

Although our conclusion is based on collateral estoppel rather than res judicata, we will uphold the result reached by the District Court since it is correct, regardless of the reason given for it. See Lindey's v. Goodover (1994), 264 Mont. 449, 453, 872 P.2d 764, 766. We therefore hold that the District Court did not err in finding there was no question of fact and that the Robinsons' first claim should be dismissed.

16

The Robinsons argued in their motion to the District Court for summary judgment that they were entitled to an order declaring the mortgage invalid since eight years had passed from when the mortgage became due and its foreclosure was barred by the statute of limitations in § 27-2-202(1), MCA. The District Court, while noting that the Wyoming judgment ordered that the mortgage secure the payment of the promissory note, went on to analyze the issue in the context of a judgment lien. In ultimately holding that the statute of limitations had not run on the execution of a judgment lien, the court denied the Robinsons' motion and granted the bank's motion for summary judgment instead.

The Robinsons argued on appeal that the issue was the validity of the mortgage and again urged that the eight year statute of limitations had expired and the mortgage is therefore invalid and unenforceable. As we have noted, in the Wyoming consent judgment the parties agreed to the order which provided that the mortgage "shall continue in effect and secure the payment of this judgment until such time this judgment has been fully paid and satisfied." According to the order, the Robinsons and the bank agreed to extend the mortgage until the judgment was paid. This Court has held that parties may agree to extend the life of a mortgage. Aitken v. Lane (1939), 108 Mont. 368, 375, 92 P.2d 628, 630. We conclude that the Wyoming consent judgment tolled the statute of limitations until the underlying obligation was paid, and therefore, the statute of limitations had not yet begun to run on the enforcement of the bank's mortgage.

17

Since the Robinsons agreed to toll the statute of limitations in the Wyoming consent judgment, they cannot now argue that the eight year statute under § 27-2-202(1), MCA, has run on the mortgage. This Court however makes no determination as to the effect of the tolled statute of limitations in regard to the mortgage.

Although we do not follow its reasoning, we agree with the District Court's result on the issue of whether the statute of limitations has expired. See Lindey's, 872 P.2d at 766. Therefore, we conclude that the District Court did not err in holding that the statute of limitations had not run on the execution of a judgment lien.

In summary, the District Court's April 14, 1994, order is properly before this court due to the consolidations of the two district court actions. We reverse the District Court's ruling that 28 U.S.C. § 1963 created a new judgment for purposes of the six year period for issuing a writ of execution found in § 25-13-101, MCA, and conclude that the bank's writ is quashed because of the expiration of that period. We further conclude that the bank properly filed a transcript of the Montana federal court judgment in state court pursuant to § 25-9-303(1), MCA. Although we rely on other grounds, we affirm the District Court's grant of summary judgment in the declaratory judgment action in favor of the bank on the Robinsons' claim that the mortgage is invalid due to a lack of consideration. Finally, we again rely on other grounds to affirm the District Court's granting of summary judgment in favor

18

of the bank in the declaratory judgment action on the Robinsons' statute of limitations argument.  The parties clearly agreed to toll the statute of limitations for foreclosing on the mortgage until the judgment was satisfied.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

19

Justice James C. Nelson concurs and dissents.

I agree with our analysis of Issues 1, 3 and 4 and dissent from our decision on Issue 2.

On Issue 2, I disagree with our conclusion that on registration of the Wyoming federal court judgment in Montana federal district court, a new judgment was not created under 28 U.S.C. § 1963. In my view, we should interpret the effect of registration under this federal statute as the federal circuit courts have.

In Stanford v. Utley (8th Cir. 1965), 341 F.2d 265, then Circuit Judge Blackmun, wrote what is probably the seminal decision interpreting § 1963. Contrary to our decision here, the federal court stated:

> We have concluded that § 1963 is more than "ministerial" and is more than a mere procedural device for the collection of the foreign judgment. We feel that registration provides, so far as enforcement is concerned, the equivalent *of a new judgment of the registration court.* [Emphasis added.]

Stanford, 341 F.2d at 268.

The court based its conclusion on several considerations. First, the court found the statute to be more comprehensive than the limited execution type of statute exemplified by 28 U.S.C. § 2413. Moreover the clear, unambiguous and purposeful language of § 1963 requires registration to "have the same effect as a judgment," rather than something far inferior. Second, giving the transferred judgment "lesser status" would thwart some or all of the purposes of § 1963, which include the simplification and

20

facilitation of enforcement of federal judgments; the elimination of the necessity and expense of a second lawsuit; and the avoidance of impediments such as diversity of citizenship which new and distinct federal litigation might otherwise encounter. Third, the authorities (Moore's Federal Practice; Barron & Holtzoff, Federal Practice and Procedure; and the Restatement of Conflict of Laws; for example) do not narrow the language of the statute in their comments and applications. Fourth, § 1963 appears to be broader in its language and scope than a mere "ministerial" or enforcement aid and has some substantive aspect as opposed to being exclusively procedural in character. Stanford, 341 F.2d at 270-71.

Moreover, without attempting to reconcile the conflicting language used by the two federal district courts in Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union (N.D.Cal. 1955), 128 F.Supp. 715; and Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union (D. Hawaii 1955), 128 F.Supp 697, Judge Blackmun, nevertheless, found the actual holdings of those two cases--that timely registration opens the way to enforcement procedure in the registration court--were consistent with the court's decision in Stanford. Stanford 341 F.2d at 268-69.

Finally, Marx v. Go Pub. Co., Inc. (9th Cir. 1983), 721 F.2d 1272, is consistent with Stanford in holding that registration under § 1963 creates a new judgment. As the majority points out, Montana had not in 1987 yet adopted the registration procedures under the Uniform Enforcement of Foreign Judgments Act. The only

21

conclusion that I can draw from that statement in reference to this issue is that if the Uniform Act had been in effect in 1987, then a federal court looking to Montana law (i.e. the Uniform Act) would have concluded that registration of a foreign judgment in Montana under that Act would have created a "new" Montana judgment. In that I agree.

Moreover, that conclusion is consistent with the Montana law that was in effect in 1987. Specifically, § 27-2-201, MCA, did (and still does) permit actions on judgments of federal and state courts of record to be commenced in Montana within 10 years from the date of entry of the judgment. Section 27-2-201(1), MCA. Nothing in that section or in our case law indicates that in Montana a judgment obtained by suing out federal or sister state court judgment would not be a "new" judgment for all purposes. In fact, our current case law compels the opposite conclusion. See Welch v. Huber (1993), 262 Mont. 114, 862 P.2d 1180; and Jones v. Arnold (Mont. 1995), 900 P.2d 917, 924, 52 St.Rep. 779, 783, which indicate that, as to domestic judgments, a judgment obtained through an action on a judgment is a "new" judgment.

Furthermore, § 25-9-303, MCA, discussed in our opinion also lends support to the conclusion that registration creates a "new" judgment for execution purposes. Section 25-9-303(1), MCA, provides, in pertinent part that:

> From the time of the filing [of the federal court judgment with the clerk of the state district court], the judgment becomes a lien upon all real property of the judgment debtor that is not exempt from execution in the county and . . . *the lien continues for 6 years unless the judgment is previously satisfied.* [Emphasis added.]

22

I suggest that it is more than mere coincidence that the time period during which the judgment lien is in effect on filing of the federal court judgment in state court under this statute, is exactly the same time period as the judgment lien for "new" judgments docketed with the clerk of court. See § 25-9-301(2), MCA. If the filing of the federal court judgment in state court did not create a "new" judgment, then the statute could not provide unequivocally for a full 6-year judgment lien. Rather, the length of the lien from the state court filing would be dependent upon the running of some other time period which commenced when the federal judgment was originally issued.

Accordingly, until our decision here, I suggest that a federal court that looked to Montana law in general and to §§ 27-2-201(1) and 25-9-303(1), MCA, in particular, to determine whether registration under § 1963 created a new judgment in this state, would likely have come to the same conclusion as did the court in Marx.

At least until this case, it appears that the registration of or suing out of a foreign federal or state court judgment in Montana would create a "new" judgment in this state. The same is true of a Montana federal court judgment transferred by filing of a transcript of judgment in the state district court. The mischief in our decision here is that, now, execution in Montana on a whole class of judgments originating in other jurisdictions must henceforth be accomplished, not in accordance with time limits clearly established in Montana law, but rather, in reference to

23

time limitations established in the originating states. Accordingly, I would hold that under § 1963, a new judgment was created when the Wyoming federal court judgment was registered in Montana federal district court on August 1, 1989, and I dissent from our conclusion to the contrary.

_____
Justice

Justice Karla M. Gray joins in the foregoing special concurrence and dissent.

_____
Justice

Justice W. William Leaphart, dissenting.

I concur with the Court's holding in issues one and two, and specially concur in issue four. However, I dissent from our holding in issue number three that § 25-9-303(1), MCA, provides an alternative method for filing a judgment of a Montana Federal District Court in a Montana State Court in addition to the procedure provided for in the Uniform Enforcement of Foreign Judgments Act, §§ 25-9-501 through -508, MCA. Section 25-9-303(1), MCA, predates the Uniform Act. It provides that a foreign judgment may be filed in Montana State Court by the filing of a "transcript of the original docket of a judgment." The Uniform Act, passed in 1989, provides that a foreign judgment is filed in Montana State Court by the filing of an authenticated copy of the foreign judgment with the clerk of the district court. Section 25-9-503, MCA. Thus, § 25-9-303(1), MCA, conflicts with the Uniform Act requirement that an authenticated copy of the judgment be filed. I would hold that the Uniform Act impliedly repeals the inconsistent provisions of the prior law.

Generally, repeal by implication is not favored unless the statutes in question are irreconcilable. W.R. Grace & Co. v. Department of Revenue (1989), 238 Mont. 439, 450, 779 P.2d 470, 476, cert. denied, 493 U.S. 1094, (1990); Montana Power Co. v. Public Serv. Comm'n (1984), 214 Mont. 82, 93, 692 P.2d 432, 437-38; State ex rel. Sol v. Bakker (1982), 199 Mont. 385, 392, 649 P.2d 456, 460. However, such repeal is necessary if the statutes are irreconcilable and if repeal will give effect to the obvious legislative intent expressed in passing the newer and more comprehensive act. State v. Carisch Theatres, Inc. (1977), 172

25

Mont. 453, 458, 564 P.2d 1316, 1319.

In many instances, this Court has held that the passage of comprehensive uniform legislation repeals conflicting provisions of earlier law. See, e.g., In re Holmes (1979), 183 Mont. 290, 298, 599 P.2d 344, 348 (holding that the Uniform Probate Code impliedly repealed the Mortmain Statute); Carisch Theatres, 564 P.2d at 1319 (holding that a comprehensive movie theater licensing act impliedly repealed an earlier conflicting licensing scheme); State v. Langan (1968), 151 Mont. 558, 564, 445 P.2d 565, 569 (holding that the Uniform Drug Act superseded prior search and seizure statutes).

Montana is not alone in following this rule of statutory construction. See Peter v. State (Alaska 1975), 531 P.2d 1263; Dairyland Ins. Co. v. Rose (N.M. 1979), 591 P.2d 281, 284; Rivera v. District Court (Okla. 1993), 851 P.2d 524, 527. In Peter, the Supreme Court of Alaska held that the Uniform Alcoholism and Intoxication Treatment Act repealed by implication an earlier statute prohibiting a person from being intoxicated while upon or along a highway. Peter, 531 P.2d 1263. The Peter court recognized two categories of repeal by implication:

> There are two well-settled categories of repeals by implication: (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

Peter, 531 P.2d at 1267 (citations omitted).

Both rationales apply to the instant case. First, § 25-9-503, MCA, establishes a new and different method of filing a foreign judgment; an authenticated copy of the judgment as opposed to a

26

transcript of the original docket pursuant to § 25-9-303(1), MCA. It only makes sense that there should be just one acceptable method of filing foreign judgments, otherwise there was no point to the passage of the Uniform Act. The Uniform Act and § 25-9-303(1), MCA, are irreconcilable, therefore § 25-9-503, MCA, impliedly repeals § 25-9-303(1), MCA.

Second, as a Uniform Act, the Uniform Enforcement of Foreign Judgments Act covers the whole subject area and was clearly intended as a substitute. Repeal by implication is particularly compelling in the case of a subsequent Uniform Act because one of the primary purposes in adopting a Uniform Act is to bring the law of the State of Montana into conformity with the laws of the other states adopting the same Uniform Act. See, e.g., §§ 25-9-508, 25-9-609, 25-9-715, MCA.

The Uniform Enforcement of Judgments Act does provide for an "optional procedure" whereby a judgment creditor's right to bring an action to enforce his judgment instead of proceeding under the Uniform Act "remains unimpaired." Section 25-9-507, MCA. Significantly, the Uniform Act does *not* provide that the prior provision allowing the filing of a transcript pursuant to § 25-9-303(1), MCA, remains *unimpaired* as an option. The Court, in allowing the bank to pick and choose between compliance with the Uniform Act and the conflicting provisions of § 25-9-303(1), MCA, has defeated the whole goal of uniformity as set forth in § 25-9-508, MCA.

I conclude that the District Court erred in finding that the Bank was not required to follow the Uniform Act in registering the

27

judgment in Montana State District Court.

_____
Justice

Justice Terry N. Trieweiler joins in the foregoing dissent of Justice W. William Leaphart.

_____
Justice